# Exhibit 1

BEFORE THE ARBITRAL TRIBUNAL COMPRISING

Justice S. P. BHARUCHA
Former Chief Justice of Supreme Court of India
Presiding Arbitrator

Justice G. B. PATNAIK
Former Chief Justice of Supreme Court of India
Co-Arbitrator

Justice V. N. KHARE
Former Chief Justice of Supreme Court of India
Co-Arbitrator

In the Matter of Arbitration Dispute between:

M/s Hardy Exploration & Production (India) Inc.                    Claimant

Versus

Government of India, Ministry of Petroleum &
Natural Gas                                                       Respondent

## AWARD

Oil and Gas form very important natural resources of any country.  It plays an important role in the economy of the country.  Oil and Gas is a critical economic sector, given the close co-relation between economic growth and consumption of petroleum and gas.  Mindful of this, the Government has undertaken measures to attract private investments.   India is the 4th largest oil and gas consumer in the world after USA, China and Japan, but is heavily dependent on imports to meet its energy requirements.  Therefore, discovery of oil and gas in the country is of paramount importance.  To step up efforts at exploration, the country switched to the exploration licensing policy.  The policy has proved successful in attracting private investments.  The exploration of gas and oil operate a combination of equipments and conditions not seen in other industry.   It is undoubtedly a very risky and highly expensive business.  Those who indulge in the business of exploration, spend huge sum of money not being sure of the result of such exploration.   The greatest challenge in such exploration is to develop and execute the project on schedule and within budget while facing challenging criteria and

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi at
Authorised Under Section 76
Indian Evidence Act

specifications. Local explorers need global partners who can work with them in new geography markets and coordinate the overall delivery of project. With increasing investment in energy markets and new geographies coupled with new infrastructure in emerging markets, engineering procurements and construction players need to be able to deliver a global service. India is not that rich in oil resources as compared to Middle East countries. Experience has shown that even discoveries which had shown great potentiality were nothing but a bubble to burst within a couple of years of production. Therefore the euphoria over gas and oil discovery fades in no time. Having regard to financial involvement in exploration of gas and oil and having regard to the chances of such discoveries quite minimal, Government of India allows exploration of gas and oil to private operators by entering into Production Sharing Contract and in such contracts the explorer invests money with the hope that he will be able to discover gas or oil in the well and if such discovery is established to be commercially viable then the discoverer gets right of getting a share of the project.

In the present dispute between Hardy Exploration and Production (India) Inc. and Government of India, Ministry of Petroleum & Natural Gas, a Production Sharing Contract had been entered into between the President of India, acting through Joint Secretary, Ministry of Petroleum and Natural Gas, and Oil and Natural Gas Corporation Limited (ONGC) and Vaalco Energy Inc; a company established under the laws of United States of America (VAALCO); Hindustan Oil Exploration Company Limited, a company established under the laws of India (HOTC ) and Tata Petrodyne Ltd., a company established under the laws of India (TPL) on 19th November, 1996 in respect of the contract area identified as Block CY-OS/2. Article 28 of the said agreement provides for assignment of interest. The contract area was 5010 Sq. Kilometers. On 30th March 2000 an addendum to the Production Sharing Contract was added recording amendment and modifications to the Production Sharing Contract. By virtue of assignment in favour of Hardy Exploration & Production (India) Inc., the said company got 25% participating interest out of 30% participating interest held by Vaalco. Article 7.3 of the


Certified to be True Copy

Examiner Judicial Department
Court of Delhi of
Authorised Under Section
Indian Evidence Act

Original Production Sharing Contract was thus substituted accordingly. The 2nd addendum to the Production Sharing Contract was made on 17th August, 2001, by which HOEC, TPL and MIL surrendered their respective participating interest in the Production Sharing Contract and HEPI expressed its desire to assume the entire 100% participating interest in the contract area. The said HEPI assigned 25% interest in favour of Gas Authority of India (GAIL) and for that purpose an amendment to the Production Sharing Contract was entered into on 27th March, 2003 after obtaining the approval of the Government of India, Ministry of Petroleum & Natural Gas by their letter dated 29th October, 2002. Thus the revised participating interest in the contract area was HEPI: 75% and GAIL: 25%. Be it mentioned that though ONGC is a party to the Production Sharing Contract right from the inception, but it never had any participating interest during exploration though it reserved its right to be exercised after the discovery becomes commercially viable in accordance with the provisions of the Production Sharing Contract. The 4th amendment to the Production Sharing Contract was executed on 3rd February, 2006 by which the contractor relinquished and surrendered all areas granted to it originally except 859 sq. Kilometers as delineated in document annexed to the said amendment and the 3rd exploration phase was allowed up to 23rd of March, 2007. Thus, at present the Claimant HEPI is the 75% participating interest holder and the contract area is reduced to 859 Sq. Kilometers of the Block CY/0S/2 as against the original contract area of 5010 Sq. Kilometers.

On the basis of geological and geophysical data and on the basis of reports of the experts as well as on the comprehensive analysis studies carried out by Amigos, the Claimant indicated to the Respondent that they have been able to discover gas called NANG and therefore would be entitled to a higher period for continuing exploration to find out whether the said discovery is commercially viable or not. Respondent, however, came to the conclusion that the discovery in question is oil and consequently in terms of the provisions of Production Sharing Contract the contractor would be entitled to a period of 24 months for completion of appraisal to establish whether it is commercially viable or not as provided under

Certified to be True Copy

Examiner Judicial Department
in Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

Article 9.5 of the Production Sharing Contract. The Respondent issued a letter on 23rd March, 2009 stating therein that the Block in question stood relinquished. There has been subsequent correspondence between the parties, which will be narrated later while indicating the case of the claimant in detail. The Claimant had approached the Ministry of Oil and Petroleum & Natural Gas, but when the Government in the Ministry of Petroleum & Natural Gas rejected the prayer of the Claimant and affirmed relying upon the views of Director General of Hydro Carbon that the discovery made was of crude oil, the Claimant issued a legal notice on 30th April, 2010 calling upon for expeditious resolution of differences failing which the Claimant would resort to arbitration as provided under Article 33 of Production Sharing Contract. When no such resolution result was possible, the Claimant invoked the Arbitration Clause and nominated Hon'ble Mr. Justice V. N. Khare, Former Chief Justice of Supreme Court of India as their Arbitrator. The Government of India nominated Hon'ble Mr. Justice G. B. Patnaik, former Chief Justice of Supreme Court of India on behalf of the Government and both the Arbitrators requested Hon'ble Mr. Justice S. P. Bharucha, Former Chief Justice of Supreme of India to act as the Presiding Arbitrator. The Tribunal was duly constituted and first meeting for preliminary direction was held on 27th August, 2010 at New Delhi. Thereafter parties filed their respective pleadings and documents in support of their respective case where upon issues for determination were framed on 17.02.2011. On the request of the Respondent the first two issues were heard as preliminary issues and were disposed of in favour of the Claimant against the Respondent by detailed order dated 28th May, 2011. Subsequent to the said order, the Claimant was allowed to lead evidence and the Examination Chief was filed by way of Affidavits, and the deponents were cross examined by the Respondent's Counsel. Then the Respondent was also allowed to file their Affidavit Evidences and the deponent was cross examined by the Claimant's Counsel. Finally, arguments were heard at Kuala Lumpur on 20th, 21st and 22nd of August, 2012 and on conclusion of the arguments the matter was reserved for passing of award.



Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act

It may be stated that ONGC and GAIL agreed and resolved by Resolution dated 17th May, 2010 stating therein that they have no objection to operator, Hardy Exploration & Production (India) Inc. (HEPI) to refer the dispute for arbitration and to decide on the appointment of Arbitrators and counsels for the dispute and will be bound by the decision of the Arbitral Tribunal and this resolution was signed by representatives of ONGC, GAIL and Hardy.

The case of the Claimant in nut shell is that it is a company existing under the laws of State of Delaware, United States of America, having its project office in Chennai and the company is involved in exploration and production of oil and gas. The said company is the party to the Production Sharing Contract executed with the Government of India for exploration in block CY-OS/2. The Respondent, Ministry of Petroleum and Natural Gas is a party to the Production Sharing Contract. The Director General of Hydrocarbons (DGH) is under the administrative control of the Ministry of Petroleum & Natural Gas and was entrusted with responsibility of implementation of the New Exploration Licensing Policy (NELP), monitoring the Production Sharing Contracts for exploration and development of blocks awarded by Government of India and promotion of investments in the hydrocarbon sector in India.

The gravamen of the Claimant's case before the Tribunal is that the Director General of Hydrocarbons without any authority under the Production Sharing Contract relinquished the Block CY-OS/2 by erroneously characterizing the nature of discovery as oil instead of Non Associated Natural Gas (NANG). According to the Claimant even the view of ONGC who is the Licensee has not been taken into account and the Respondent, by applying wrong provisions of PSC, declared relinquishment of the exploration Block prior to the due date of declaring commerciality. On the application of the Claimant, though the Government initially was in favour of reviewing its decision, it finally chose to reject the stand of the Claimant solely on the ground that the DGH, being the Technical Advisory

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

Body of the Ministry, it would not be appropriate to over-rule it but to go by its advice.

On the date of filing of Claim Petition before the Tribunal the Contractors for the purpose of exploration were GAIL and the Claimant and the ONGC was Licensee of the Block. As has been stated earlier, the Claimant obtained the entire 100% participating interest by way of assignment in its favour on 17th August, 2001 and thereafter assigned 25% of its participating interest of the Block to GAIL on 1st of January, 2002. Under the Production Sharing Contract though ONGC is also a Contractor, but being Licensee even though it does not have any participating interest, it is entitled to exercise its option of 30% participating interest on successful exploration during development and production without any payment towards exploration cost.

The case of the Claimant further is that both the Claimant and GAIL drilled exploration well in accordance with the programme during Phase-II exploration but that exploration was not successful. Thereupon, they entered into Phase-III of exploration by digging 2 more exploration wells and by applying 350 Kilometers of addition 2 D seismic data as per addendum No.4 which was signed by the Government of India on 3rd February, 2006 and the exploration period was valid till 23rd March, 2007. According to the Claimant, they successfully completed the programme before the due date. During the said exploration of Phase-III, it is stated that though the first well was a dry-hole, the second well FAN-A-1 was drilled to a depth of 4089 meters and it produced appreciable quantity of hydrocarbons in the form of Non-Associated Natural Gas (NANG), and it is apparent from the production test. The test is called a Drill Stem Test (DST) and had been carried out by Schlumberger Asia Services Limited (Schlumberger), one of the world's largest oil field service providers. The tests were conducted in the exploration well from 24th December, 2006 to 15th January, 2007 and the Claimant received reports on 21st and 22nd January, 2007. Based on the test results, though the discovery was hydrocarbons, the same christened as "Ganesha-1" and this was


Certified to be True Copy

Examiner Judicial Department
High Court of Delhi at
Authorised Under Section 76
Indian Evidence Act

communicated to the Ministry of Petroleum and Natural Gas as well as Director General Hydrocarbons on 8th of January, 2007 in Format-A prescribed by the Government for the purpose, in terms of Article 9.1 (a) of Production Sharing Contract.

Thereafter in accordance with Article 9.1 (b) of the contract, the details of the tests were submitted on 6th February, 2007, which indicated all that flowed was predominantly gas along with little condensate. On 19th February, 2007, DGH requested the Claimant to furnish the details in the format –B in terms of Article 9.1 (c) of the contract and these details in format-B were filed by the Claimant on 8th March, 2007, copy of which is exhibit-5. According to the Claimant, the nature of discovery as hydrocarbons is significant under the contract for the purpose of determining the time limit for discovery of commerciality. It is also stated that under the Production Sharing Contract discovery can be termed to be oil or gas depending upon the predominance of the oil or gas therein and necessarily therefore a discovery would be NANG even if it is associated with small quantity of condensate or oil. Since the gas discovery is more difficult to put on commercial stream and takes longer time than an oil discovery, the contract itself allows longer time frame in case of discovery being NANG.

The contract provides that exploration resulting in hydrocarbons discovery needs to be appraised by further geological, geophysical, reservoir and such drillings of appraisal well have to be pursued in order to determine that the discovery is of commercial interest or not. Though the Claimant submitted appraisal programme to DGH on 21st March, 2007, but later on certain changes were made in the said appraisal programme, which was also submitted to Director General of Hydrocarbons. Management Committee which is constituted under Article 5.1 and which consists of nominees of the Government of India, the Contractors and the Licensee passed a resolution calling upon the Claimant to continue the appraisal programme for 24 months and on certain terms as would appear from the Management Committee resolution dated 20th July, 2007, which is

Certified to be True Copy

Examiner Judicial Department
Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

exhibit 14. Further case of the Claimant is that the Claimant and GAIL spent substantial funds to carry out the aforesaid appraisal programme by engaging experts and were submitting reports to the Director General of Hydrocarbons on 28th of July, 2008 and on a telephonic conversation it was stated that the appraisal should be completed by 7th of January, 2009. Thereafter, the DGH, relying upon Article 9.5 of Production Sharing Contract, determined that it must be established that the discovery is a commercial discovery by 07.01.2009. The Claimant however continued the appraisal programme with a comprehensive analysis of data by Amigos Energy Advisors, Dallas (Amigos) a leading geo-technical advisory group specialized in interpretation of geological and geophysical data, estimation reserves and evaluation of prospects. According to the Claimant, the work was carried out by integrating the work done by various geoscientists from M/s Knowledge Reservoir (U.K.) Ltd., CGG Veritas Services and the in-house scientists of the Claimant. In fact Amigos identified two areas in 'Ganesha-I' discovery and it confirmed that the sands are gas bearing as well as prospect of economic evaluation should be made on the basis of gas volume and this report was submitted by Amigos on 28th August, 2008, which is exhibit 16. Having realized that potential of the Block was low, it was decided to drill 3 other farm wells and the appraisal programme relating to drilling was sent to the Operating Committee Meeting held on 12th of August, 2008 in which ONGC was also represented. The review of the programme was communicated to DGH on 13th August, 2008 with a request to call for a meeting of the Management Committee to review the revised appraisal programme. It is the case of the Claimant that DGH officials visited the Claimant's office on 6th and 7th September, 2008 and reviewed all the Technical Reports and geological and geophysical data more particularly the Amigos Report. A meeting of the Managing Committee was convened on 8th October, 2008 and the revision of the appraisal drilling programme was reviewed in the said meeting. Ministry of Oil and Petroleum Gas also participated and discussed more particularly pertaining to the extension of the period required for appraisal to determine the commerciality. The Claimant on the basis of work carried out till then as well as the minimum time required to complete the appraisal of discovery


Certified to be True Copy

Examiner Judicial Department
Court of Delhi of
Authorised Under Section
Indian Evidence Act.

submitted that at least 30 months from the date of original discovery should be granted and it was agreed that the Claimant would make an application for favourable consideration by the Government of India. This was also noted by the Management Committee in its minutes, which is exhibit 18.   The Claimant then sent a letter dated 9th October, 2008 seeking extension of time for completion of appraisal and also stated that the commerciality has to be declared in accordance with Article 21.4.4 of Production Sharing Contract by 7th January, 2012, inasmuch as the discovery made is NAAG and the contractor is entitled to a period of 60 months for declaring commerciality.   The said letter of the Claimant to the Ministry of Petroleum and Gas is exhibit 19.

The DGH by letter dated 24th October, 2008 intimated that the proposal was being examined and also sought for further detailed information like a) DST results in detail b) Oil & Gas analysis report and c) Core analysis report.   All these reports and information were sent by the Claimant on the very same date.   A meeting of the Operating Committee was held on 6th November, 2008 and the Operating Committee also considered that the discovery made was gas.   Minutes of the meeting dated 6th November, 2008 is exhibit 22.

On 3rd December, 2008 the Director General Hydrocarbons sent a letter to the Ministry of Oil and Natural Gas stating that the well flowed gas at 74000 cm/day with a condensate of 20-30 bbls per day with negligible water.   This letter also stated rationale for 30 months extension as provided under Article 2.9 of PSC. The Claimant thereafter made several representations on 6th November, 2008; 31st December, 2008 and 23rd February, 2009 to the Ministry to approve extension in terms of PSC as applicable for discovery of NAAG.   But without considering the relevant facts pertaining to the nature of discovery and the appraisal thereon, the DGH unilaterally declared discovery to be crude oil and issued a letter on 20th February, 2009 followed by letter dated 23rd March, 2009 that the block stood relinquished.   After issuance of letter of relinquishment, a letter was also sent to the



Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act

Ministry on 26th March, 2009 to substantiate the order of relinquishment, exhibit: 29.

The Claimant thereafter obtained two independent technical opinions from the Indian School of Mines (ISM) Dhanbad as well as Gaffney Cline Associates, UK , which are internationally reputed technical and management advisors to the Petroleum industry on 15th June, 2009 and 25th June, 2009, both of them opined that discovery was in fact is gas and is NANG. These opinions are exhibit 30 and 31. The Claimant then received a letter from DGH dated 4th July, 2009 stating therein that discovery made by the Claimant is in nature of oil and therefore the declaration of commerciality is required to be made by 7th January, 2009 as per Article 9.5 of the Production Sharing Contract. The Claimant did not agree to the aforesaid views of Director General Hydrocarbons and reiterated that the discovery made is NANG and its commerciality could be made by 7th January, 2012. This letter of the Claimant is exhibit 33. According to the Claimant in fact Director General of Hydrocarbons in its report to the Ministry for the year 2006 and 2007 treated discovery as gas discovery and on the web site also stated the discovery to be gas and when this was pointed out to the Ministry, it was indicated by DGH that there was an error in the web site while loading the data.

The Claimant then made further representations on several dates to the Ministry as well as to the Director General of Hydrocarbons indicating the inaccurate position adopted by the Director General of Hydrocarbons. Ministry then called a meeting on 13th November, 2009 to hear the party and in that meeting the Claimant indicated the basis for characterizing discovery as NANG and the details of the appraisal carried out till then were produced. But unfortunately the Director General of Hydrocarbons refused to participate in any meaningful technical discussion at the meeting and continued to adopt its incorrect position that the discovery was of crude oil. Ministry then by letter dated 15th December, 2009 asked the Director General of Hydrocarbons to comment on the feasible solution to resolve the difference of opinion about the nature of discovery and called upon



Certified to be True Copy

Examiner Judicial Department
...gh Court of Delhi of
Authorised Under Section 76
Indian Evidence Act

DGH to forward the comments by 18ᵗʰ December, 2009.   But the DGH never called the Claimant for any further discussions and on the other hand replied to the Ministry that the Block stood relinquished with effect from 7ᵗʰ January, 2009 as declaration of commerciality under Article 9.5 of the PSC was not made by 7ᵗʰ January, 2009.   Copy of the said letter is exhibit 46.

The Claimant further states  that the Ministry issued letter to the DGH on 21ˢᵗ January, 2010 wherein it referred to the review meetings between the DGH and Ministry where the representation of the Claimant  as well as the clarification by DGH  were considered. Thereafter to examine the case in its proper perspective further clarifications were required.   The Ministry also called upon the DGH to verify the records  and confirm whether the  details submitted  by the Claimant qualifies for consideration as  discovery  to have been submitted in format A & B were available and  on the basis of those details whether the Claimant is entitled for consideration as discovery in terms of Article 1.34 of PSC.   The Claimant then sent a detailed reply on 22ⁿᵈ January, 2010 to the Ministry and further letter to DGH on 25ᵗʰ January, 2010 clearly pointing out the discovery being NANG, in view of the fact that the measurable flow was only for gas and not for any other liquid.   The Claimant also referred to Amigos report.  The DGH also sent its reply to the Ministry on 8ᵗʰ February, 2010 confirming that the data in respect of drill stem tests as stated by the Claimant was correct.  It also furnished a copy of the Amigos report, but opined that the samples obtained from DST-1 and DST-2 from the well in block CY-OS/2 indicates condensate.  Thereafter representative  of DGH called upon the Claimant for further discussions on 6ᵗʰ April, 2010 where the Claimant reiterated various geological and geophysical study carried in course of appraisal programme and stated that the comprehensive study carried out by Amigos has already been submitted to DGH.

On 15.4.2010 Ministry of Petroleum and Natural Gas addressed a letter to DGH copy of which was endorsed to the Claimant and GAIL stating therein that the request for extension stands rejected based on the opinion of DGH that the

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

discovery made in the block was crude oil.   It is rather interesting to note that on the same date the Claimant received a letter from DGH stating therein certain additional information which were required to assess the nature and potential of the discovery.   Since the Ministry and DGH persisted with their views that the discovery is oil and not gas, legal notice was issued on 30.04.2010 and finally Claimant took recourse to arbitration as provided under Article 33 and on constitution of the Tribunal filed the Statement of Claim.   In the Claim Petition the Claimant also stated that by filing application under Right to Information Act the Claimant obtained the file notes with respect to the subject matter and the relevant documents and notings had been filed before this Tribunal.   It is averred by the Claimant that the Claimant and GAIL as on 31.3.2010 had spent about 500 crores and financial statement for the period was filed as exhibit 47.   In the Statement of Claim the Claimant made the following prayers:

a)      Declare that the discovery made by the Claimant and GAIL is "NANG".

b)      Declare that the relinquishment of the Block by MOP&NG is arbitrary, illegal and contrary to the terms of the PSC and therefore set it aside as null and void.

c)      Pass an order to grant extension of the PSC for a period of 5 years from the date of arbitral award to complete the pending appraisal work and to declare commerciality by such extended time in terms of the PSC.

d)      Award the financial costs suffered by the Claimant of Rs.122.50 crores as on date of filing this claim and further costs on the same basis till the date of award and till payment in terms thereof.

e)      Award costs of the arbitral proceedings including legal costs in favour of the Claimant


Certified to be True Copy

Examiner Judicial Department
High Court of Delhi at
New Delhi Under Section
Indian Evidence Act.

f)      Pass such further orders as the Hon'ble Tribunal may deem fit and proper in the facts and circumstances of the case.

The Respondent filed its reply to the Statement of Claim by contending that the prayer for declaration cannot be allowed for examination by the Tribunal, as it is outside the purview of the Production Sharing Contract. It further stated that the prayers (b) & (c) being related to prayer (a) the same cannot be granted. As has been stated earlier, on the basis of this assertion of Respondent in its reply, two Issues No.1 & 2 were heard as preliminary issues and disposed of by Order of the Tribunal dated 28.05.2011.

The positive stand of the Respondent in the reply filed to the Statement of Claim is that the Contractor failed to adhere to the terms of the Production Sharing Contract. In order to give coverage to the non-performance of the terms as well as breach in performance of the terms, the contractor pleaded that the discovery was NANG. This was not only false but unfounded. After referring to different clauses of the Contract, the Respondent took the stand that in accordance with Article 9.5 of the PSC the contractor is required to advise the Managing Committee by notice in writing that such discovery is commercial within 24 months of the original date of discovery and that not having been done, the contractor has no right to get any relief by this Tribunal. It further pleaded that since the contractor failed to declare commerciality of the production by 7.1.2009, the block stands relinquished. It is stated in the Statement of Defense that mere stating or referring to opinions or expert's reports that discovery is hydrocarbons, the discovery cannot become NANG. According to the Respondent the scientific chemical analysis report submitted by the Claimant confirms that the discovery is oil and gas and therefore its commercial discovery was to be made by 7.1.2009 and the same not having been done, block in question was relinquished. In paragraph 3 of the Statement of Defense while denying that the discovery in question has been wrongly characterized as oil by the Respondent instead of NANG and while denying the fact that the Respondent failed to appreciate   the technical reports and

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi at
Authorised Under Section
Indian Evidence Act

views of ONGC, the Respondent asserted that the Ministry rightly was guided by the advice of its technical advisory body, namely Director General of Hydrocarbons and ultimately came to the conclusion that what had been discovered was oil and not gas. According to the Respondent the discovery   having been confirmed as oil the question of applicability of Article 21.4.4 does not arise and that discovery cannot be held to be discovery of NANG merely on production of report of experts. The Respondent also submitted that obtaining technical opinion from Indian School of Mines, Dhanbad and Gaffney Cline Associate of U.K. do not improve upon the case of the Claimant on verge of relinquishment.  The Claimant's view that the discovery is NANG is far from reality., On the question of indicating in the web site of DGH that the discovery is gas, it is stated that the said indication was of tentative nature purely on the performance report submitted by the Claimant and cannot be held to be a determinative factor to treat the discovery as gas.   The other assertion of the Claimant in the Claim Petition was denied.     Finally, the Respondent submitted that the Respondent having considered the germane material and having come to the conclusion that the discovery is crude oil and gas and the Claimant not having carried out any further appraisal to indicate commerciality of the said oil, the same stood relinquished.   It is also stated that the question whether the discovery is gas or oil is a highly technical matter and the Director General of Hydrocarbons being constituted to advise the Ministry on all these technical issues, Ministry rightly thought it appropriate to go by the said advice and therefore even though in the file at lower position somebody might have noted the discovery to be gas, it would be of no consequence.   The Respondent ultimately prayed for dismissal of the Claim with award of compensatory cost in favour of the Respondent.

The Respondent also filed a supplementary written statement indicating therein 'since the Production Sharing Contract itself came to an end by terms of contract, the Claim Petition is not maintainable'.  It further stated that the Claimant has failed to use in-built machinery provided under the contract to seek declaration regarding discovery as NANG from the Management Committee and the Tribunal


Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act

is not entitled to make that declaration.  According to the Respondent the in-built mechanism provided under Article 5 and 9 for seeking declaration regarding classification of production can only be adhered to and such declaration can be given by the Management Committee.  It was reiterated that save and except declaration contained in Formant A and Formant B, there was no further development on the field of the product to be termed as commercial discovery and since the Claimant failed to entertain appraisal of well in terms of review granted by MC on 8th October, 2008 and failed to declare discovery to be commercial discovery, the Respondent took recourse to the provisions of the contract and communicated the order of relinquishment essentially on the ground that by efflux of time and non-performance of the contract by the Claimant it stands relinquished. According to the Respondent the Claimant is not entitled to approach the Tribunal for declaration that the discovery is NANG without previous recourse to the Management Committee.   On the notings of the file of the Ministry the Respondent states that such correspondence cannot be termed as admission on the part of the Respondent.  On the question of claim of compensation, the Respondent states that right of the Claimant can only be decided within the parameter of Production Sharing Contract and the said PSC not having provided any right for compensation in terms of money, but have only a right to Production Sharing post commercial discovery, question of grant of compensation does not arise.

The Claimant did file a rejoinder affidavit replying to the stand of the Respondent. On conclusion of pleadings, following issues were framed:

1. Whether the PSC does not cover disputes regarding exploration alone?

2. Whether the disputes raised in the statement of claim are excepted matters and therefore outside the jurisdiction of the Arbitral Tribunal?

3. Does the nature of the discovery in the block CY-OS/2 qualify under the terms of the Production Sharing Contract ("PSC") as Non-Associated Natural Gas ("NANG")?



Certified to be True Copy

Examiner Judicial Department
High Court of Delhi at
Authorised Under Section 76
Indian Evidence Act.

4.  Is the claimant entitled to the time period under article 21.4.4 of the PSC for declaring commerciality of such discovery under the PSC?

5.  a) Is the Claimant entitled to the time period under article 21.4.4 of the PSC for declaring the appraisal work programme?

    b) If so, was the same wrongfully denied by the Respondent?

6.  Was the decision of the Respondent in relinquishing the block CY-OS/2, solely in terms of Article 9.5 of the PSC, in accordance with the terms of the PSC?

7.  Is the Claimant entitled to any compensation?

8.  To what relief is the Claimant entitled to?

9.  Is the Claimant entitled to costs?

As has been stated earlier, the first two issues have already been disposed of by Order dated 28th May, 2011 and it was held that the Arbitral Tribunal has the jurisdiction to decide the dispute whether the discovery made by the Claimant is NANG, as claimed by the Claimant, or oil, as claimed by the Respondent. Out of the rest of issues, the important issues are Issue 3 and 4. But before considering the issues on the basis of materials produced before this Tribunal and the arguments advanced by Learned Counsel for the parties, it would be appropriate to quote certain provisions of the contract in extenso:

"1.5    Appraisal Programme" means a programme, carried out following any Discovery of Petroleum in the Contract Area for the purpose of delineating (lie Petroleum Reservoirs to which the Discovery relates in terms of thickness and lateral extent and determining the characteristics thereof and the quantity of recoverable Petroleum therein.

1.6     "Appraisal Well" means a Well drilled pursuant to an Appraisal programme.

1.9.    "Associated Natural Gas" or "ANG" means Natural Gas occurring

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 78
Indian Evidence Act

in association with Crude Oil either as free gas or in solution, if Crude Oil can in itself be commercially produced.

1.15.   "Commercial Discovery" means a Discovery of Petroleum reserves which, has been declared a Commercial Discovery in accordance with the provisions of Article 9 and 21.

1.34.   "Discovery" means the finding of a deposit of Petroleum not previously known to have existed, which can be recovered at the surface in a flow measurable by conventional petroleum industry testing methods.

1.40.   "Exploration Operations" means operations conducted in the Contract Area   pursuant to this Contract in searching for Petroleum and in the course of an Appraisal Programme and   shall include   but   not   be   limited to aerial, geological, geophysical, geochemical, palaeontological.   palynological. topographical and seismic   surveys,   analysis,   studies   and   their   interpretation, investigations   relating   to the subsurface geology including structure   test ' drilling, stratigraphic test drilling, drilling of Exploration Wells and Appraisal Wells and other related activities such as surveying, drill site preparation and all work necessarily connected therewith that is conducted in connection with Petroleum exploration.

1.41.   "Exploration Period" means the period during which Exploration Operations may be carried out by the Contractor as provided in Article 2 hereof.

1.42.   "Exploration Well" means a Well drilled for the purpose of searching for undiscovered Petroleum accumulations on any geological entity (be it of structural, stratigraphic, facies or



Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

pressure nature)   to at least   a depth of stratigraphic level specified in the Work Programme.

1.58.   "Non Associated Natural Gas" or "NANG" means Natural Gas which is produced either without association with Crude Oil or in association with Crude Oil which by itself cannot be commercially produced.

1.59.   "Oil" means "Crude Oil".

5.5.   The following matters shall be submitted to the Management Committee for approval :

a.   annual Work Programmes and budgets and any modifications or revisions thereto, as proposed by the Operating Committee,   for Development Operations and Production Operations:

b.   proposals for the declaration of a Discovery as a Commercial Discovery and the approval of Development Plans as may be required under this Contract, or revisions or additions to a Development Plan:

c.   boundaries of a Development Area including any modifications thereof;

d.   appointment of auditors;

e.   collaboration with licensees or contractors of other areas;

f.   claims or settlement of claims for or on behalf of or against the Contractor in excess of limits specified in the Operating. Agreement or fixed by the Management Committee from lime to lime whichever is higher;

g.   any other matter required by the terms of this contract to be submitted for

Certified to be True Copy

Examiner Judicial Department
High Court at Delhi of
Authorised Under Section
Indian Evidence Act.

the approval of the Management Committee:

h.       any other matter which the Contractor or the Operating Committee decides to submit to it.

9.1.     If and when a Discovery is made within the Contract Area, the Contractor shall:

a.       forthwith inform the Management Committee of such Discovery :

b.       promptly thereafter, but in no event later than a period of thirty (30) days from the date of such Discovery, furnish to the Management Committee particulars in writing, of such Discovery;

c.       promptly run tests to determine whether such Discovery is of potential commercial interest and, within a period of sixty (60) days after completion of such tests, submit a report to the Management Committee containing data obtained from such tests and its analysis and interpretation thereof, together with a written notification to the Management Committee of whether, in the Contractor's opinion, such Discovery is of potential commercial interest and merits appraisal.

9.2.     If the Contractor determines to conduct a drill stem or production test, in open hole or through a perforated casing, with regard to any Discovery, it shall notify the ONGC of the time of such test at least twenty four (24) hours prior to the proposed test, and the ONGC shall have the right to have a representative present during such test.

9.3.     If pursuant to Article 9.l(c), the Contractor notifies the Management Committee that the Discovery is of potential commercial interest, the Contractor shall prepare and submit to the Management Committee within one hundred and twenty (120) days of such notification, a proposed Appraisal Programme with a Work Programme and budget to carry

Certified to be True Copy

Examiner Judicial Department,
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

out an adequate effective appraisal of such Discovery designed to determine within the period specified in Article 9.5:

i.       whether such Discovery is a Commercial Discovery and

ii.      with reasonable precision, the boundaries of the Development Area.

9.4.     The proposed Appraisal Programme for such Discovery shall be reviewed by the Management Committee within forty five (45) days after submission thereof pursuant to Article 9.3. The Management Committee may request for any additional information as it may reasonably require within fifteen (15) days of submission by Contractor of the said Appraisal Programme. Contractor shall furnish such information within fifteen (15) days of the receipt of request from Management Committee for such information. Within fifteen (15) days of the Management Committee's review, Contractor shall incorporate any revisions suggested by the Management Committee which Contractor considers beneficial and shall provide the Management Committee with a copy of the revised Work Programme. Said Appraisal Programme including revisions, if any, shall be adopted as the Appraisal Programme and the Contractor shall promptly commence implementation thereof; and the budget for the Financial Year shall be revised accordingly.

21.4.    Non Associated Natural Gas (NANG)

In the event of a Discovery of NANG, the Contractor shall promptly report such Discovery to the Management Committee and the provisions of Articles 9.1 and 9.2 shall apply. The remaining provisions of Article 9 would apply to the Discovery and Development of NANG only insofar as they are not inconsistent with the provisions of Article 21.

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

If, pursuant to Article 9.1(c), the Contractor notifies the Management Committee that the Discovery is of potential commercial interest, the Contractor shall submit to the Management Committee, within twelve (12) Months from the date of notification of the above said Discovery, the proposed Appraisal Program, designed to determine (i) whether such Discovery is a Commercial Discovery and (ii) the boundaries of the Development Area.

21.4.3 The proposed Appraisal Program 'referred to in Article 21.4.2 shall be reviewed by the Management Committee within sixty (60) days of its submission by the Contractor. The Management Committee may request for any additional information as it reasonably require within twenty one (21) days of the submission by Contractor of the said Appraisal Programme. Contractor shall furnish such information within twenty one (21) days of the receipt of request from MC for such information. Following review of the Appraisal Program and related budget and any revisions agreed by the Contractor, the Contractor shall proceed to implement said Appraisal Program. During this appraisal period Contractor shall endeavour to complete gas sales agreements whether with the Government or other buyers.

21.4.4 If on the basis of the result of (he Appraisal Program, the Contractor is of the opinion that NANG has been discovered in commercial quantities:

a. it shall submit to the Management Committee, as soon as practicable but not later than sixty (60) Months from the date of notification of the aforementioned Discovery, the notification for declaration of the Discovery as a Commercial Discovery and approval of the proposed Development Area. Such Development


Certified to be True Copy

Examiner Judicial Department
High Court of Delhi
Authorised Under Section
Indian Evidence Act

Area may either be a new Development Area or a modification of an existing Development Area so as to encompass the proposed Commercial Discovery within its boundaries based on the report submitted.

Such notification shall take into account the Government's policies on gas utilization and propose alternative options (if any) for use or consumption of the NANG and be supported by, inter alia technical and economic data, evaluations, interpretations and analyses of such data, and feasibility studies relating to the Discover}' prepared by or on behalf of the Contractor and other relevant information.

If no notification of Commercial Discovery is submitted to (he Management Committee by the Contractor within sixty (60) Months from the date of notification of the said Discovery, the Contractor shall relinquish its rights to develop such Discovery and the area relating to such Discovery shall be excluded from the Contract Area.

Where the Contractor has submitted notification for the declaration of a Discovery as a Commercial Discovery, the Management Committee shall review the Contractor's proposal for the commercial utilization of the NANG in the domestic market or elsewhere and in the context of Government's policy on gas utilization and the chain of activities required to bring the NANG from the Delivery Point to potential end consumers in the domestic market or elsewhere.

The Contractor shall within twelve (12) Months of the declaration of the Discovery as a Commercial Discovery, submit a Development Plan to the Management Committee for

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorized Under Section 76
Indian Evidence Act.

its approval. Such Development plan shall be supported by all relevant information including, inter alia, the information required in Article 9.7.

If the Management Committee is unable to agree on the Development Plan within one hundred eighty (180) days of submission, the Contractor shall be entitled to submit such Development Plan directly to the Government for approval. Government shall respond to the said submission within sixty (60) days of its receipt. If the Government disapproves the Contractor's proposed plan or plans, the Government shall state in writing the reasons for such disapproval and the Contractor shall have the right to resubmit said proposal.

e.       When the Management Committee or the Government approves the Contractor's comprehensive plan or plans for development of a Commercial Discovery for the utilization of NANG in the domestic market or elsewhere, the said Discovery shall be promptly developed by the Contractor in accordance with the approved plan which shall he the Development Plan.

21.4.5       In the event the Contractor does not commence development of such Discovery within ten (10) years from the date of notification of the Discovery, the Contractor shall relinquish its rights to develop such Discovery and the area relating to such Discovery shall be excluded from the Contract Area."

This brings us to a discussion of the issues.



Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section
Indian Evidence Act

ISSUE NO.3:

This issue in fact is the most important issue in the dispute between the parties. The Claimant has all along been contending that the discovery is NANG within the meaning of Article 1.58 of the PSC. The Respondent has been insisting the same to be oil even though at some point of time the Ministry was of the opinion that the discovery is Gas.   Under the Production Sharing Contract NANG means natural gas, which is produced either without association with crude oil or in association with crude oil which by itself cannot be commercially produced.   Mr. Sudipto Sarkar, Learned Sr. Counsel for the Claimant, contended that under the contract whether the discovery is oil or gas depends upon predominance of oil or gas in the discovery.   He placed before us the tests carried out by Schlumberger Asia  Services Limited, which is one of the world's largest oil field service providers and the data in particular sent by the Claimant to the Respondent on 8th January, 2007 after discovery was christened as "Ganesha-I" which is exhibit 2. He also relied upon the test details of the wells submitted to the Respondent under format-B on 8th March, 2007 exhibit 5 and contended that the very test results unequivocally  indicate that the discovery  consisted  predominantly of gas, though presence of condensate was there to some extent.   The letter of the Claimant dated 8th January, 2007 to the Joint Secretary, Ministry of Petroleum and Natural Gas unequivocally  states  that  the  Claimant  submitted  information  about  the hydrocarbons  discovery  under  Production  Sharing  Contract.      When  the Government wanted detailed particulars of discovery in format B the same was supplied under exhibit 5 and a bare look at column 13 would indicate that the discovery in question was predominantly gas, though some quantity of oil was also present.  It is true that in none of these 2 formats submitted by the Claimant it was indicated to be NANG, but it was stated that it was a hydrocarbon discovery.  Gas is defined as natural gas in Article 1.46 and NANG as defined in Article 1.58 means natural gas produced either without association of oil or in association of oil which by itself cannot be commercially produced.   Oil has been defined under Article 1.59 to mean crude oil.   Having regard to the definition of NANG in

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act

Article 1.58 and on examining the data and particulars provided under format A and format B, the conclusion is irresistible that the discovery on 8.1.2007 from the contract area was gas and not oil. The Claimant in course of proceedings before the Tribunal led evidence of several experts, who have unequivocally given their opinion about the discovery in question. One Mr. Raghu Hegde was examined before this Tribunal who has experience in well test and who was in employment with Schlumberger Asia Services Limited. His employer was engaged by the Claimant to collect data and Mr. Hegde stated the steps taken by him and under his supervision between the period December, 2006 and January 2007. His evidence further discloses that the test reports of DST-1, DST-2, DST-3 and DST-4 had been issued by Schlumberger Asia Services Limited and the reports pertained to the raw data obtained during the tests based on the actual flow and did not contain any opinion or interpretation. Evidence of Mr. Hegde is of no consequence in deciding the question whether discovery was oil or gas. But the reports and data in those reports were analyzed and interpreted by Dr. John Sharry, a petroleum geologist, who has 30 years experience in exploration and production of oil and gas. The Claimant wanted the comprehensive analysis of the data collected by Schlumberger and engaged Amigos Energy Advisor, Dallas (Amigos), a leading Geotechnical Advisory Group specialized in interpretation of geological and geophysical evaluation of the prospects. Dr. John Sharry was the Chief Geologist of Amigos and he had examined the data in relation to the discovery of exploratory well by Hardy Exploration in the contract area on Cavery Offshore and after detailed analysis submitted the report on 28th August, 2008. The said Dr. Sharry proved the report in course of his evidence before the Tribunal. He had given a report after analyzing the data and materials, which is exhibit C-16 and he categorically stated in his affidavit evidence, "I confirm that the discovery is gas and not oil and any appraisal and development of this discovery can only be related to gas discovery. Since the recovered volumes are predominantly gas with little condensate, the said discovery should be classified as Non Associated Natural Gas".

Certified to be True Copy

Examiner Judicial Department
...gh Court of Delhi at
Authorised Under Section 76
Indian Evidence Act.

This categorical evidence of experts examined by the Claimant has not been impeached in any manner in the cross examination by the Respondent. The entire cross examination is extracted herein below, in extenso:

Dr. Sharry "(c)ross examined by Mr. Jagjit Singh, Learned Counsel, on behalf of the Respondent.

Q1.   I put it to you that before giving this report, Ex. C16, C16A and C16B you did not perform any chemical test. Is that correct?

A:   Yes, it is.

Q2.   I put it to you that the opinion given by you in terms of Ex.C16, 16A,16B is merely on the saying of the Claimant. Is it correct?

A:   No it is not correct.

Q3:   I put it to you that the Ministry of Petroleum, Govt. of India, was never put to notice by you while entertaining reference from the Claimant for giving opinion. Is it correct?

A:   I had no communications with that Ministry.

Q4:   Is it correct that the report, Ex.C16, is given by you on the basis of the data allegedly provided by the Claimant to you?

A:   Yes, the data was provided by the Claimant and m y opinion is based on it.

Q5:   I put it to you that before submitting the report you had not undertaken any kind of tests. Is that right?

A:   I interpreted various types of data made available to me and which I requested. In doing these analyses, I arrived at my conclusions.

Q6:   I put it to you that your conclusions are not based on study of the subject and is only presumptive. Is it correct?

A:   No. That is not correct.

Q7:   I put it to you that your reports Ex. C16A and Ex. C16B are not correct. What do you say?

A:   Interpretations are interpretations.  I believe that my interpretation of the data as given in my report is correct."

The Claimant also led evidence of one Dr. Tarkeshwar Kumar, who is also

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

a Petroleum Engineer and has 30 years of association in exploration and production of Oil and Gas and was at one point of time Director of Indian School of Mines, Dhanbad and at present he is Director of NIT, Durgapur.   As per his affidavit he was requested by the Claimant to give opinion relating to the nature of discovery tested in Block CY-OS/2 East Coast of India and he examined the tests data and issued his opinion. As per his evidence he had reviewed the drill stem test results of the well FAN-A-I carried out Schlumberger and had opined that the maximum volume of hydrocarbons flowed during the test was of gaseous nature and negligible quantity of condensate.   He also reviewed the results of DST-2 and DST-3 and opined that the condensate produced along with gas is in the order of 7% of the total hydrocarbons produced.   He finally gave his opinion that the quantity of condensate is negligible and economic development of discovery could only be based on the gas and, therefore, discovery is NANG.

The aforesaid conclusion of this expert, Dr. Tarkeshwar Kumar, has not been impeached in any manner in the cross examination.   The entire cross examination is extracted herein below in extenso:

"Q1.   Is if correct that before submitting your report, Ex. C30, you did not perform any test to arrive at the opinion expressed in such report?

A:      Yes, I had not performed any test.

Q2.   I further put it to you that the report, Ex. C30, submitted by you at the dietate of the Claimant. Is that correct?

A:      No, it is not correct.

Q3.   I further put it to you that you were not provided with true, actual and correct data for giving your opinion. What do you say?

A:      I believe that the data and information provided to me was correct.



Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act

Q4.    Did you check up correctness of the data provided to you from Ministry of Petroleum?

A:    No.

Q5.    I put it to you that the opinion Ex. C30 is based on theoretical assumptions only. What do you say?

A:    It is not correct as the report has been prepared based on information and data provided to me, which includes report of Schlumberger and Chennai Petroleum Corporation Ltd."

On the basis of aforesaid evidence of two experts, which remained unchallenged in view of the nature of cross examination, which is set out earlier, the Tribunal is of the opinion that the nature of the discovery in the Block CY-OS/2 would unequivocally qualify under the term of the Production Sharing Contract as Non Associated Natural Gas.

Not only has there been, practically, no cross examination of all the aforesaid expert witnesses to impeach their testimony, but also the Respondent has not chosen to examine any expert on its behalf to contradict the testimony of the experts who were examined by the Claimant.

Mr. Jagjit Singh, Learned Additional-Solicitor-General, appearing for the Respondent stated that since in the reports submitted by the Claimant there was no mention of NANG with regard to the nature of discovery, both in format-A and Format-B, the stand of the Claimant that the discovery is NANG is an afterthought. According to him, in none of the documents and correspondence between the period from 2003 and October 2008, the Claimant had indicated the discovery to be NANG and it was only on 9.10.2008, when the Claimant wanted extension of time, that for the first time it indicated that the discovery was NANG. This submission is of no significance inasmuch as the data furnished by the Claimant soon after the discovery in Format-A and Format-B unequivocally indicated the predominance of

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

gas in the discovery with presence of condensate and, as such, it came within the expression NANG as defined in Article 1.58. That apart, when the Respondent has failed to impeach the testimony of the two experts whose evidence has been led by the Claimant and the Respondent has not produced any evidence of experts on its side, it is not possible for the Tribunal to whittle down the positive evidence of Dr. John Sharry and Dr. Tarkeshwar Kumar.

Mr. Jagjit Singh, Learned Counsel Additional Solicitor General for the Respondent, strenuously urged that it is only the Managing Committee which has the power under the contract to declare that the discovery is either gas or oil and since the said Committee had not been notified by the contractor that NANG had been discovered, the Tribunal would not be justified in making any declaration about the nature of the discovery. The Management Committee is constituted under Article 5 of the contract.   The said Committee is constituted for proper performance of petroleum operations.     Article 5.4 enumerates the powers and duties of the Management Committee and Article 5.5 provides for the matters required to be submitted to the Management Committee for approval. Having examined the aforesaid two provisions of the contract, it is difficult  to accept the submission of the Counsel for the Respondent that it is the Managing Committee who has the power to decide the question whether the discovery is gas or oil.  In our considered opinion, Article 5 does not empower the Managing Committee to make such decision.   It is only when the contractor, after further exploration, has come to the conclusion that the discovery is a commercial discovery, that the proposal for such declaration has to be made to the Management Committee under Article 5.5 (b). That stage has not reached in the case in hand. In this view of the matter, we do not find any substance in the arguments of Learned Counsel Additional Solicitor General. There is no dispute that in terms of Article 9.1 (a) (b) and (c), the contractor had informed in the prescribed proforma of the factum of discovery as well as about the fact that the discovery was of potential commercial interest.     The Learned Counsel Additional Solicitor General also emphasized that in none of the documents submitted by the Claimant to the Respondent there had been mention of the fact that the discovery was NANG. There is no dispute with the aforesaid statement.

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

but the details submitted by the contractor to the Respondent in Format A and Format B unequivocally showed that the discovered product had predominance of gas with a small amount of condensate and, necessarily therefore, it came within the definition of NANG as defined in Article 1.58. The Respondent appears to be obsessed with the fact of presence of oil in the discovery in question. In our considered opinion, the mere presence of oil would not take the product out of the category of 'gas' as defined in Article 1.58 so long as there existed the predominance of gas. The Respondent appears to have committed an error in concluding the discovery was oil merely because oil was present in the discovery, notwithstanding the fact that the figures and data indicated the presence, predominantly, of gas. The contention of the Respondent that Exhibits 2 to Exhibit 18 confirm the discovery as oil is wholly unsustainable. As has been stated earlier, it is true that prior to the writing of Exhibit 18, there was no specific mention by the Claimant that the discovery was NANG, but the substance of the data of the product which was found and which was reported to the Respondent unequivocally indicated the predominance of gas in the discovery. This conclusion of ours is reaffirmed by the opinion of the two experts examined by the Claimant, which evidence has already been discussed.

It may be noticed at this stage that the Respondent led the evidence of its Chief Chemist, but the evidence was, essentially, that as the Claimant failed to submit declaration of commerciality by 7.1.2009, the Respondent passed the order of resumption. From the cross examination of this witness it has been elicited that he is merely an M.Sc in Chemistry, is Chief Chemist in the office of Directorate General of Hydrocarbons and was looking after, as co-ordinator, the contractual provisions of the Production Sharing Contract. He candidly admitted in answer to Question No.11 that he was not technically competent in exploration and production operations, which was a vast and diversified subject. He further admitted in answer to Question No.12 that he had never personally carried out a drill stem test, as that was not the job of the Chemist. In answer to Question No.25 he admitted that he had not come across the detailed drill stem test report submitted by the Operator. It was also elicited in cross examination that he had not come

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

across several documents submitted by the Claimant in support of its stand that the discovery is gas. The witness also admitted that he did not come across Exhibit C16, the report of Amigos Energy, which was generated by the contractor. After going through the evidence of this witness, the Tribunal is of the considered opinion that his evidence is of no assistance to resolve the dispute whether the discovery in question was gas, NANG or oil. The witness neither has the expertise nor the experience for this. He has not even gone through all the relevant records of the Directorate General of Hydrocarbons before giving his evidence. His evidence, therefore, is not helpful to the Respondent to contradict the evidence of two experts; Dr. John Sharry and Dr. Tarkeshwar Kumar, both of whom had, undoubtedly, the necessary expertise to interpret the data from the discovery and come to the conclusion as to whether it is NANG, as claimed by the Claimant, or oil as claimed by the Respondent.

It is interesting to notice at this stage that the Director of Hydrocarbons, who is the Technical Advisor Body to the Ministry, in its Web Site notified the discovery in question made by the Claimant as gas discovery and only on 14th of October, 2009 changed the site asserting that it was wrongly given in the Web Site as gas. The Claimant obtained the notings of Ministry by taking recourse to Right to Information Act and produced the same before this Tribunal and those notings unequivocally indicate that the Ministry was also of the opinion that the results of the tests carried out by the Claimant confirmed the presence of gas, which had been approved by the Operating Committee on 6th November, 2008, which included the representatives from ONGC and GAIL, the two Public Sector Undertakings, who are the participating industries in the discovery in question, ultimately on account of insistence of Director General of Hydrocarbons, the Ministry preferred to go by the said advice in view of larger public interest. The Tribunal does not rely upon the aforesaid notings for arriving at its conclusion on Issue No.3, but merely refers to the same to indicate how the matter was dealt with by the Ministry itself.

Dispute like the one in hand, is a matter, accurate understanding of which cannot be attained without special familiarity. Rule of evidence recognize this and

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi at
Authorised Umpir Section 76
Indian Evidence Act

permits evidence of persons having the skill to form accurate impression which is termed 'experience'. The matter to be testified, namely whether the discovery is 'Oil' or' Gas' is one upon which it may clearly be presumptuous, for a person of ordinary experience to testify and establish. It is upon the aforesaid premise the evidence of Dr. John Sharry and Dr. Tarkeshwar Kumar is required to be scrutinized and applied.

An expert's evidence is necessarily founded on his training and experience in the subject in question. When an expert provides a report by interpreting data collected in the course of some discovery, his reasoning and conclusions are set out in the report. An expert has the advantage of a particular skill or training which enables him to draw inferences from the observed facts and derived data and to form an opinion. Very often an expert would be able to identify facts which may be obscure to a lay witness. In the case of scientific analysis of the data, the expert ascribes objective significance to the data in question and gives reasons for his opinion after interpreting the data. In a dispute between the parties, as in the present one, as to whether a particular discovery is gas, as contended by the Claimant, or oil as, contended by the Respondent, the evidence of experts is reasonably required to resolve the dispute. In such matters what is required to be examined is whether witness satisfies the Tribunal that he has sufficient familiarity with and knowledge and expertise of the subject in question so as to render an opinion of value in resolving the issue. The two expert witnesses examined by the Claimant in this regard do satisfy this test. That apart, there does not exist any conflicting factual evidence which may require any reconciliation. In other words, there does not exist any contrary evidence to sustain the case of the Respondent that the discovery was oil. It is well known that an expert has to furnish the Tribunal with necessary scientific criteria for the accuracy of his conclusion, with an opportunity to the Respondent to discredit the expert by eliciting material in cross examination that would suggest that his conclusion is erroneous. But, unfortunately, a bare look at the cross examination, which has been quoted earlier, does not bring out an iota of material to contradict or impeach the testimony of the Claimant's witnesses in any manner. It is no doubt true experts give opinion

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section
Indian Evidence Act.

evidence and do not decide a dispute or usurp the functions of the Tribunal, but in a world of accelerating scientific and technological advances, every Tribunal concerned with scientific matters has to rely upon such expert testimony.

In the aforesaid premises, the conclusion is irresistible that the nature of the discovery in Block CY-OS/2 qualifies under the terms of the Production Sharing Contract as Non Associated Natural Gas (NANG). This issue is, therefore, answered in favour of the Claimant and against the Respondent.

ISSUE NO. 4:

This issue deals with the question of the time period, which the explorer is entitled to for deciding on the commerciality of the discovery in question. The two relevant articles of the Production Sharing Contract are Article 9 and Article 21. Article 9 deals with all discovery, whether oil or gas, made within the contract area and the obligation of the contractor thereafter. Article 21 deals with Natural Gas and Article 21.4 deals with the procedure to be followed by the contractor in the case of discovery of NANG. Article 21.4.1 provides that even in the event of discovery of NANG, the provisions of Article 9.1 and 9.2 shall apply. The remaining provisions of Article 9 will apply only if they are not inconsistent with Article 21. Under Article 9.1 (a) the contractor is duty bound to inform the Management Committee forthwith of any discovery and thereafter it would have to furnish particulars of such discovery. For this purpose a format has been provided in Form-A, and the Claimant complied with the same on 8.1.2007. Under Article 9.1 (c) the contractor is required to notify the Management Committee as to whether in the contractor's opinion the discovery is of potential commercial interest and merits appraisal. For this purpose Format-B had been provided for. The Claimant did furnish its report in Format-B on 19.2.2007. Once the contractor opines that the discovery is of potential commercial interest, then he has to give necessary appraisal programme whereafter the contractor has to perform appraisal and to establish that the discovery is a commercial discovery. The period allowed for notifying the discovery as a commercial discovery after appraisal in case of

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section
Indian Evidence Act

crude oil is 24 months from the date on which the discovery was initially notified under Article 9.5; but the maximum period allowed to a contractor for notifying that the discovery, in commercial quantity, is of NANG, 60 months are provided under Article 21.4.4. Thus, the contract itself provides different periods for establishing commerciality of the discovery, 24 months in the case of oil and 60 months in the case of NANG. In view of the finding that the discovery here comes under the definition of NANG, the Tribunal is of the opinion that Article 21.4.4 gets attracted and the contractor will be entitled to 60 months from the date of the original notification of discovery for notifying commerciality on the basis of the results of the appraisal programme. The Tribunal, accordingly, comes to the conclusion that the Claimant is entitled to the time period under Article 21.4.4 of the Production Sharing Contract for declaring the commerciality of the discovery. Issue No.4 is answered accordingly.

### ISSUE NO.5:

An analysis of Article 9 and Article 21 indicates that a different time period is prescribed under the contract for completing the appraisal programme. In other words, a contractor is duty bound to intimate a discovery forthwith to the Respondent. Then, within the specified period mentioned the contractor is duty bound to intimate to the Respondent about the potentiality of the discovery being of commercial interest. There after the contractor is required to complete the appraisal work and within the maximum period specified notify the Respondent about the commerciality of the discovery. In the case of the discovery being NANG, the contractor is entitled to the maximum period of 60 months from the notification of the original discovery to come to a conclusion whether the discovery is commercially viable or not. In the case in hand, the discovery was made on 8.1.2007 and, on account of the dispute between the parties with regard to the nature of the discovery, the Respondent issued a letter on 23rd March, 2009 that the block stood relinquished. The relinquishment was ordered entirely on the assumption that the discovery was crude oil and, therefore, that the contractor was entitled to a period of 24 months from the date of discovery to notify whether such

Certified to be True Copy

Examiner Judicial Department
Hi_gh Court of Delhi of
Authorised Under Section 76
Indian Evidence Act

discovery was a commercial discovery or not, with the relevant technical and economic data evaluation as provided in Article 9.5. The Respondent, and particularly the Director of Hydrocarbons, has taken recourse to aforesaid provision of the contract in passing the order of relinquishment, but Article 9.5 has no application, in our considered opinion, since the discovery has been found to be NANG and, hence, the contractor would be entitled to a longer period, of a maximum of 60 months from the date of discovery as provided under Article 21.4.4. Since the Claimant was rendered unable to complete the appraisal programme on the erroneous conclusion about the nature of the discovery, the Claimant would be entitled to an extension of time for the purpose of completing the appraisal programme to come to a conclusion about the commerciality of the discovery.    Necessarily therefore, in our considered opinion, the Claimant is entitled to the time that was denied to him to carry on appraisal programme to establish the commerciality of the discovery.   In the aforesaid premises, we answer Issue 5(a) by holding that the Clamant is entitled to extension of time for the purpose of completing the appraisal work programme and 5(b) by holding that the Claimant was wrongfully denied the same by the Respondent.

The question still remains to be considered: having regard to the facts and circumstances of this case, what would be a reasonable period which the Tribunal can allow the Claimant for that purpose. Mr. Jagjit Singh. Learned ~~Additional Solicitor General~~ counsel, referring to the appraisal submitted by the Claimant, contended that there has been no readiness on the part of the Claimant to perform the necessary appraisal programme and there has been no prompt implementation of the programme in terms of Article 9.4 and, therefore, the question of the Claimant's entitlement to extension of time does not arise.   We are unable to accept the submission of the Learned ~~Additional Solicitor General~~ counsel since, in our view, the Clamant was denied the time provided for in the contract for appraisal and to come to the conclusion about the commerciality of the discovery in terms of Article 21.4.4.    But the fact remains that the Claimant has already carried on the exploration business for a period of more than 2 years from the date of discovery on 8.1.2007 and, even in the case of the discovery being NANG, the Claimant was

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi at
Authorised Under Section 78
Indian Evidence Act.

entitled to a maximum period of 60 months therefrom to notify the commerciality of the discovery. Having taken into account the time from the date of discovery till the date of intimation about the relinquishment, the Tribunal is of the considered opinion that a period of 3 years from the date of the award to mobilize equipment and manpower and then to carry on further appraisal under Article 21.4.4 of the contract is reasonable. The issue is answered accordingly.

ISSUE NO. 6:

So far as Issue No.6 is concerned, it transpires that by letter dated 20th February, 2009 the Director General of Hydrocarbons intimated to the Claimant that since the discovery was notified on 8.1.2007 as per Article 9.1 (a) of Production Sharing Contract, the commercial discovery had to be made by 7.1.2009 as per Article 9.5 thereof and, since the contractor has failed to declare whether the discovery was commercial or not by that date, the block would stand relinquished. The aforesaid letter is extracted hereunder in extenso:

"DGH/CY-OS/2/Dis-Commercial/20/2/09          February 20, 2009

Dr. J. N. Sahu,

Exploration Manager

Hardy E & P (India) Inc,

Chennai

           Subject: Status regarding appraisal of discovery of Cy-OS-2

Status of discovery:

1.      Discovery was notified on 8.1.2007 as per article 9.1 (a) of the PSC. As per article 9.5 of the PSC discovery has to be declared by 07.01.2009.



Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act

2.   MC reviewed appraisal programme as well as reviewed the modified appraisal programme on 08.10.2008.

Requirement from the contractor:

Status of discovery:

- Contractor was to declare whether the discovery is commercial by 07.01.2008

- Contractor has failed to do so.

In view of the above, contractor is advised to immediately inform commerciality otherwise, block will stand relinquished. Its intention for developing; i.e. discovery commercial without any further delay within 15 days, failing which block will stand relinquished.

(T. D. Prasad)

Nodal Officer"

As has been indicated, while Article 9 deals with the procedure to be followed in the case of all discoveries, whether gas or oil; Article 21 deals with procedure to be followed in the case of gas, and Article 21.4 specifically deals with Non Associated Natural Gas (NANG). Article 21.4.1 makes it clear that Article 9.1 and 9.2 shall apply to the discovery of NANG, but the remaining provisions of Article 9 would apply to NANG only if they were not inconsistent with Article 21. Article 21.4.4 is a specific provision providing for a period of 60 months for declaring the commerciality of the discovery in the case that the discovery is NANG. Admittedly, the Claimant, in terms of Article 9.1 (a) and (b), forthwith informed the Management Committee about the discovery as well as furnished the necessary particulars of such discovery in Format-A on 7.1.2007. Admittedly, in accordance with Article 9.1 (c), the Claimant submitted a report to the Management Committee containing data obtained from tests and analysis as well as the interpretation thereof along with the opinion that such discovery was of potential

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

commercial interest.   The next stage in the case of discovery is to find out the commerciality of the discovery and, for this purpose, in the case of discovery of oil, the contract provides a period of 24 months from the date of discovery, as provided in Article 9.5, and sixty months from the date of discovery of hydrocarbons under Article 21.4.4. Obviously, being of the opinion that the discovery was of oil, the Respondent intimated to the Claimant that commercial discovery was required to be made within 24 months, that is, by 7.1.2009, and that not having been done, the block would stand relinquished. But, in view of the finding on Issue No.3, that the nature of the discovery in question made by the Claimant for the block CY0OS/2 qualified as Non Associated Natural Gas under the terms of the Production Sharing Contract, the aforesaid decision of the Respondent must be held to be not in accordance with the terms of Production Sharing Contract.   The Respondent committed a serious error in taking a decision that the discovery was oil and thereafter proceeding under Article 9.5.    We are, therefore, of the considered opinion that the decision of the Respondent was not in accordance with the terms of the contract and, as such, the decision was erroneous.   Issue No.6 is accordingly answered in favour of the Claimant and against the Respondent.

ISSUE NO.7:

Issue No.7 relates to the Claimant's entitlement to compensation.   In the Statement of Claim the Claimant has made a case that it is entitled to damages as well as interest upon the investment made by it from the date of relinquishment till the date on which it is allowed to continue further appraisal. Through the evidence of Mr. S. Manimaran, the Claimant has established that by August 31, 2010, the Claimant and GAIL had spent about Rs. 500 crores on the project. In support of this case, the audited account of the Joint Venture was produced which, on the face of it, indicates that the expenditure was to the tune of Rs. 500.6 crores.    The Respondent denied this fact in its Statement of Defense. But when the witness Mr. Manimaran was produced for cross examination, the Learned Additional Solicitor General cross examined him only on the question whether the Claimant had made any disclosure that the discovery was NANG.   Neither was the credibility of the

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section
Indian Evidence Act

witness on the subject he deposed to impeached in any manner nor was there any attempt to establish that the audited report indicating expenses was incorrect. For better appreciation, the entire cross examination of this witness is quoted hereunder in extenso:

"Cross examined by Mr. Jagjit Singh, Learned Counsel for the Respondent.

Q1:   Is it correct that the Claimant did not make any disclosure to the Management Committee at any time before 8th October, 2008 that the discovery was of NANG gas and that it had commercial viability?

A:   I do not know, because this is not my field. My field is accounts.

Q2.   Is it, therefore, correct that you are not aware of the operational aspects of PSC pre October, 2008 and post October, 2008?

A:   Yes, it is correct.

Q3:   Is it correct that PSC does not allow or permit the Claimant to recover towards expenditure incurred on undertaking exploration in contact area?

(As per Tribunal):

The question relates to the interpretation of the PSC and cannot be the subject of oral evidence.

The question is overruled.

Q4:   I put it to you that your affidavit evidence has been submitted without any basis or reason. Is that correct?

A:   It is not correct. I had submitted the accounts.

Cross examination concluded.



Certified to be True Copy

Examiner Judicial Department
High Court of Delhi at
Authorised under Section 76
Indian Evidence Act.

No re-examination."

In the course of arguments, the Learned Additional Solicitor General referred to Article 14 of the PSC and contended that the exploration cost has to be borne by the contractor and it is only when commercial discovery is established that it will be entitled to a certain percentage of the product. In a nutshell, the argument of the Learned Counsel for the Respondent is that exploration is the responsibility of the contractor under the Production Sharing Contract and it is not entitled to any compensation if it is unable to get commercial discovery of the product within the period specified in the contract. There is no dispute with the aforesaid preposition. The question that arises for consideration is whether, on account of the illegal action of the Respondent, when the contractor was prevented from carrying out further appraisal to establish commerciality and its entire investment was blocked for this period it will be entitled to interest on the amount of its investment. In view of our conclusion on Issue No.6, and since it is the order of the Respondent of relinquishment of the block that prevented the contractor for carrying out further exploration, we think it appropriate that the contractor should be entitled to interest on the amount spent, viz. Rs. 500 crores, for the period the contractor was illegally prevented, i.e., from the date relinquishment till the date on which the block is restored to the it pursuant to the award. That the contractor has spent Rs. 500 crores has been proved by the evidence of Mr. Manimaran, evidence which was, as shown above, not controverted in cross examination. In our considered opinion, the rate of interest on the amount of Rs. 500 crores should be 9% per annum upto the date of the award. So far as the rate of interest subsequent to the date of award is concerned, the contractor will be entitled to interest at the statutory rate of 18% per annum as provided in the Arbitration & Conciliation Act, 1996. Since the award contemplates the return of the block to the Claimant, the Tribunal does not consider it appropriately to grant damages. The issue is answered accordingly.

Certified to be True Copy

Examiner Judicial Department
High Court of District of
Authorised Under Section
Indian Evidence Act

Issue No.8:

So far as Issue No.8 is concerned, the same will be dealt with at the end in considering the prayers of the Claimant in the Statement of Claim.

Issue No.9:

So far as Issue No.9 is concerned, on behalf of the Claimant a Statement of Cost incurred by the Claimant in respect of the arbitration has been filed. From the said statement it appears that the total costs incurred by the Claimant towards travel and accommodation of the Arbitrators and for arranging the venues the meetings is Rs.21,33,114/-. The Tribunal in the minutes of the meeting held on 27th August, 2010 had stated that all expenses pertaining to the arbitration proceedings would be borne in equal shares by the parties. Thus, the Respondent is liable to reimburse the Claimant to the tune of Rs.10,66,557/-. The Claimant in the Statement of Cost indicated the other costs incurred by it, including the fees of the Arbitrators as well as professional fees of the counsel and their travel expenses. Having considered the ultimate directions given by this Tribunal, we are of the opinion that the Claimant would be entitled to a lump sum of Rs. 25 lacs towards costs, apart from the sum of Rs.10,66,557/- which the Respondent is required to reimburse towards 50% of the costs of travel and accommodation of the Arbitrators and the costs towards arbitral venues. Rounding it off, we direct the Respondent to pay a sum of Rs. 36 lacs to the Claimant towards costs.

On 22nd August, 2012, when the hearing was closed and the award reserved, the Tribunal directed each of the parties to deposit with each of the Arbitrators the sum of Rs. 17,00,000/- on or before 22nd September, 2012 to cover their fees for the preparation, writing and discussion of the award and the signing thereof in Kuala Lumpur. The Claimant has made the payment. The Respondent had failed to do so by 12th November, 2012. The parties were then informed that if the Respondent did not make the payment on or before 12th December, 2012, it would be for the Claimant to do so, as provided for by Section 38 (2) of the Arbitration &

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act

Conciliation Act, 1996, and the making of the payment by the Claimant would be taken into account and form part of the award. The Respondent did not make the payment on or before 12th December, 2012. Upon being called upon to do so, the Claimant has made the payment that the Respondent failed to make. The Claimant is, therefore, entitled to recover from the Respondent the amount of the said payment, being Rs. 51,00,000/- in the aggregate.

Coming now to the ultimate directions and relief pursuant to the prayers of the Claimant and bearing in mind the findings arrived at on the issues, the Tribunal makes the following award:

It is declared that the discovery made by the Claimant and GAIL is NANG. It is further declared that the order of relinquishment of the block by the Ministry of Petroleum and Natural Gas was illegal, being on the erroneous impression that the discovery was Oil. That order of relinquishment is declared to be null and void. It is ordered that the parties shall be immediately relegated to the position in which they stood prior to the order of the relinquishment and the block shall be restored to the Claimant. The Claimant shall be entitled to a period of 3 years from the date on which the block is restored to it to carry out further appraisal. If, on the basis of the result of such appraisal, the Claimant forms the opinion that NANG has been discovered in commercial quantities then it shall so intimate to the Management Committee. The Management Committee shall be entitled, in accordance with Article 21.4.3, to review the proposed appraisal programme filed by the Claimant.

The Tribunal also awards and directs that the Respondent shall pay to the Claimant interest on the amount spent by the Claimant, in the sum of Rs. 500 crores, from the date of relinquishment till the date on which the block is restored to the Claimant pursuant to the award. The said sum will carry interest at the rate of 9% per annum until the date of the award and thereafter at the statutory rate of 18% per annum till realization.

The Respondent shall pay to the Claimant the aforementioned amount of

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.

Rs. 51,00,000/-. Should this payment not be made within eight weeks of the date of the award, it shall carry interest at the statutory rate of 18% per annum till payment or realization.

The Respondent shall pay to the Claimant costs quantified, as already held, in the sum of Rs. 36 lacs.

Signed in triplicate at Kuala Lumpur on 2nd February, 2013.

**V.N. KHARE**

Co-Arbitrator

**S. P. BHARUCHA**

Presiding Arbitrator

**G.B. PATNAIK**

Co - Arbitrator

Certified to be True Copy

Examiner Judicial Department
High Court of Delhi of
Authorised Under Section 76
Indian Evidence Act.