## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| HARDY EXPLORATION & PRODUCTION (INDIA), INC., | : | | |
| | : | | |
| Petitioner, | : | Civil Action No.: | 16-0140 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 16 |
| | : | | |
| GOVERNMENT OF INDIA, MINISTRY OF PETROLUEM AND NATURAL GAS, | : | | |
| | : | | |
| Respondent. | : | | |

## MEMORANDUM OPINION

### Granting in Part and Denying in Part Defendant's Motion to Dismiss

## I.  INTRODUCTION

Petitioner Hardy Exploration & Production (India), Inc. ("HEPI") has filed a Petition to

confirm an arbitration award ("Award") against Respondent, the Government of India ("India"),

acting through its Ministry of Petroleum and Natural Gas ("Ministry").  *See generally* Pet.

Confirm Arbitration Award ("Pet."), ECF No. 1.  HEPI filed its Petition pursuant to Section 207

of the Federal Arbitration Act.  9 U.S.C. § 207.  Because India is a foreign state, HEPI must

effect service under the Foreign Sovereign Immunities Act ("FSIA").  28 U.S.C. § 1608.  India

moves to dismiss the Petition, arguing that HEPI did not properly effect service on India and,

thus, that this Court lacks personal jurisdiction over India.  *See generally* Specially-Appearing

Resp't's Mot. Dismiss ("Mot. Dismiss"), ECF No. 16; Specially-Appearing Resp't's Mem. Law

Supp. Mot. Dismiss ("Resp't's Mem."), ECF No. 16-1.  India's motion is now ripe and ready for

decision.

The Court finds that HEPI has failed to demonstrate that it properly served India.  The

contract between the parties does not constitute a special arrangement for service for the

purposes of the FSIA, and, therefore, India has not been served.  The Court will not, however,

dismiss the Petition.  Instead, HEPI will be permitted another opportunity to serve India by

relying on the other methods for service identified in the FSIA.

## II.  BACKGROUND

The Court will begin its analysis by providing an overview of the facts giving rise to this

dispute before turning to the parties' subsequent arbitration and litigation.

### A.  Factual Background[1]

This case originates in the parties' participation in a Production Sharing Contract ("PSC")

for the development and production of hydrocarbons.  The PSC governs the exploration of a

geographic block called CY-OS/2 (the "Block") found off the southeastern coast of India.  *See*

Pet. ¶ 5; Decl. of Ian MacKenzie ("MacKenzie Decl.") ¶ 3, ECF No. 1-2.  *See generally*

Production Sharing Contract ("PSC"), MacKenzie Decl., Ex. 2, ECF No. 1-4.  The PSC has been

in force since November 19, 1996.  *See* Pet. ¶ 6; *see also* PSC at 136.  At that time, an agreement

was reached by three private companies, India's state-owned oil company, and "the President of

India, acting through the Joint Secretary, Ministry of Petroleum and Natural Gas."  *See* Pet. ¶ 6

(quoting PSC at 1).  The PSC permitted the private companies to explore the Block and, if they

found commercially viable hydrocarbon reserves, extract those resources under a production

---

[1] The following facts are taken from the Petition and documents attached to the Petition, and those facts are taken as true in this procedural posture.  *See Orange Middle E. & Afr. v. Republic of Equatorial Guinea*, No. 15-0849, 2016 WL 2894857, at *1 (D.D.C. May 18, 2016) (citing *Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015)).

sharing arrangement.  *See* Pet'r's Mem. Law Supp. Pet. to Confirm Arbitration Award ("Pet'r's Mem.") at 2–3, ECF No. 1-1; PSC art. 14–15.

HEPI was not an original participant in the PSC.  *See* Pet. ¶ 7.  Instead, HEPI acquired a 25% participation share in the PSC from one of the original private companies in 1997.  *See* Pet'r's Mem. at 3.  HEPI's interest was confirmed in the initial addendum to the PSC executed on March 30, 2000.  *See* MacKenzie Decl., Ex. 3 at 1–2, ECF No. 1-5.  Subsequently, each of the other private companies decided not to participate further in the PSC, and HEPI acquired a 100% participation share.  *See* Pet'r's Mem. at 3; *see also* Arbitration Award at 3, MacKenzie Decl., Ex. 1, ECF No. 1-3.  This change was reflected in the second addendum to the PSC, which was executed on August 17, 2001.  *See* MacKenzie Decl., Ex. 4 at 1–2, ECF No. 1-6.  Finally, HEPI transferred a 25% share of its interest in the PSC to GAIL (India) Ltd., a state-owned, Indian company in the business of gas processing and distribution.  *See* Pet'r's Mem. at 3.  This change was reflected in an additional amendment to the PSC.[2]  *See generally* MacKenzie Decl., Ex. 5, ECF No. 1-7.  India was a signatory to each of these three amendments to the PSC.  *See* MacKenzie Decl., Ex. 3 at 6; Ex. 4 at 4; Ex. 5 at 5.  HEPI continued to own a 75% share during the period giving rise to the underlying dispute between the parties.  *See* Pet'r's Mem. at 4.

In late 2006, an exploratory well drilled in the Block yielded hydrocarbons.  *See id.* at 4; Arbitration Award at 6.  HEPI and GAIL alerted the Ministry of Petroleum and Natural Gas about the discovery on January 8, 2007.  *See* Pet'r's Mem. at 4; Arbitration Award at 6–7.  The PSC defined the procedure the parties would follow in the event of such a discovery.  *See* PSC art. 9.  Under the PSC, an appraisal period followed any discovery of hydrocarbons.

---

[2] The document is styled as "Amendment No. 3" to the PSC, while the first two changes are referred to as "Addendum" and "Addendum No. 2," respectively.  *See* MacKenzie Decl., Ex. 3 at 1; Ex. 4 at 1; Ex. 5 at 1.

*See* Pet'r's Mem. at 4; Arbitration Award at 7.  At the end of the appraisal period, the PSC required the participating companies to issue a determination as to whether the discovery was a "Commercial Discovery," meaning that the production of the hydrocarbons would be economically feasible.  *See* Pet'r's Mem. at 4; PSC arts. 9.5, 21.4.4.  The PSC provided different appraisal period durations depending on the type of hydrocarbons discovered.  *See* Pet'r's Mem. at 4.  If the discovery was crude oil, as defined by the PSC, the appraisal period would be two years.  *See* PSC art. 9.5.  If the discovery was natural gas, on the other hand, the appraisal period would be five years.  *See* PSC art. 21.4.4.

The parties disagreed about whether the discovery was crude oil or natural gas. *See* Pet'r's Mem. at 5.  The Ministry maintained that the discovery was crude oil, and informed HEPI that its rights to the Block were relinquished after the shorter two-year appraisal period concluded on January 7, 2009.  *See* Pet'r's Mem. at 5; Arbitration Award at 9–10.  During 2009 and 2010, HEPI pursued a number of avenues in an attempt to convince the Ministry to change its position.  *See* Pet'r's Mem. at 5; Arbitration Award at 10–12.  The Ministry refused, insisting that the discovery was crude oil and that HEPI had forfeited its rights to the Block.  *See* Pet'r's Mem. at 5.

### B.  The Arbitration and Subsequent Litigation

The PSC includes an arbitration provision.  *See* PSC art. 33.  Specifically, Article 33 of the PSC provides that "any unresolved dispute, difference or claim which cannot be settled amicably within a reasonable time may . . . be submitted to an arbitral tribunal for final decision."  PSC art. 33.3.  Article 33 sets forth the procedures for any arbitration, including selecting Kuala Lumpur, Malaysia as the venue.  *See* PSC art. 33.12.  The PSC provides that

4

"[t]he decision of the arbitral tribunal, and, in the case of difference among the arbitrators, the decision of the majority, shall be final and binding upon the Parties."  PSC art. 33.8.

HEPI initiated an arbitration proceeding following the parties' inability to resolve which assessment period applied to the discovery of hydrocarbons in the Block.  *See* Pet'r's Mem. at 5. Both HEPI and India nominated former Chief Justices of the Supreme Court of India to serve as party-appointed arbitrators, and the two party-appointed arbitrators nominated another former Chief Justice to serve as the presiding arbitrator.  *See* Pet'r's Mem. at 5; Arbitration Award at 4. The Tribunal first turned to preliminary issues, and issued an order on May 28, 2011 finding that the dispute between the parties was subject to arbitration and within the Tribunal's jurisdiction. *See* MacKenzie Decl., Ex. 7, ECF No. 1-9; *see also* Arbitration Award at 4.

After considering the merits of the dispute, the Tribunal issued a unanimous award on February 2, 2013 in Kuala Lumpur, Malaysia.  *See* Arbitration Award at 43.  On the central question, the Tribunal found that "the nature of the discovery in the Block  . . .  would unequivocally qualify under the term of the [PSC] as Non Associated Natural Gas."  *Id.* at 28. Because the discovery was natural gas, not crude oil, the Tribunal decided that HEPI was "denied the time provided for in the contract for appraisal and to come to [a] conclusion about the commerciality of the discovery."  *Id.* at 35.  The Tribunal concluded that severing HEPI's interest in the Block was "illegal, being on the erroneous impression that the discovery was Oil." *Id.* at 42.

As a remedy, the Tribunal stated that "the parties shall be immediately relegated to the position in which they stood prior to the order of the relinquishment and the block shall be restored to [HEPI]."  *Id*.  The Tribunal also awarded HEPI financial compensation of 5 billion Indian Rupees, *see id.*, which HEPI alleges corresponds to roughly $74 million, *see* Pet'r's Mem.

at 7 n.1.  Finally, the Tribunal also ordered India to pay certain costs of the arbitration.

*See* Arbitration Award at 42–43.

HEPI alleges that India has not complied with the Award.  *See* Pet'r's Mem. at 7.  HEPI's

declarant, Mr. Ian MacKenzie, states that no legal proceedings related to the Award have been

filed in Malaysia, the venue of the arbitration.  *See* MacKenzie Decl. ¶ 9.  India did, however,

file a petition in Delhi High Court challenging the Award in July 2013.  *Id.* ¶ 6.  In November

2013, HEPI filed its own petition to enforce the award in the same court.  *Id.* ¶ 8.  India's petition

was dismissed by the Delhi High Court on July 9, 2015.  *Id.* ¶ 6.  A request for reconsideration of

that decision was rejected on January 20, 2016.[3]  *Id.* ¶ 7.  HEPI's petition to enforce the award in

India remained pending in the Delhi High Court in January 2016.  *Id.* ¶ 8.

### C.  Proceedings before this Court

On January 28, 2016, HEPI filed this Petition before the Court, seeking the confirmation

of the Award.  *See generally* Pet.  On February 17, 2016, HEPI filed a Certificate of Service

asserting that India was served by Federal Express and attaching the relevant receipts and

confirmations.  *See* Pet'r's Certificate of Service, ECF No. 10.  India moves to dismiss the

Petition.  *See generally* Mot. Dismiss.  India argues that HEPI's method of service, delivery by

Federal Express, is insufficient under the FSIA.  *See* Resp't's Mem. at 1.  India also argues that

this Court lacks personal jurisdiction over it because of HEPI's purportedly faulty service.

*See id.* at 1–2.  For these two reasons, India argues that the Petition must be dismissed.  *See id.*

At this time, India has not addressed the merits of HEPI's Petition.  *See id.* at 2.

---

[3] India asserts that it appealed the decision of the Delhi High Court and that the appeal
remained pending on May 20, 2016.  *See* Resp't's Mem. at 4.

In response, HEPI argues that the PSC specifically contemplates service by Federal Express, and that method therefore constitutes a special arrangement for service for the purposes of the FSIA.  *See* Pet'r's Mem. P. & A. Opp'n to Resp't's Mot. Dismiss ("Pet'r's Opp'n") at 6–13, ECF No. 17.  Because the parties agree that the PSC is governed by Indian law, HEPI also provides the declaration of former Indian Supreme Court Justice Deepak Verma, who discusses principles of Indian contract law.  *See id.* at 6; *see also* Decl. of Justice Deepak Verma ("Verma Decl."), ECF No. 17-1.  In the alternative, HEPI argues that it should be given additional time to serve India if this Court determines that HEPI's first attempt was not effective.  *See* Pet'r's Opp'n at 13–15.  Finally, HEPI requests leave to skip one of the usual steps in serving foreign states under the FSIA.  *See id.* at 15–16.

In its reply, India provides a competing declaration prepared by former Chief Justice of the Indian Supreme Court K.G. Balakrishnan.  *See* Specially-Appearing Resp't's Reply Mem. of Law Supp. Mot. Dismiss ("Resp't's Reply") at 1, ECF No. 20; *see also* Decl. of Justice K.G. Balakrishnan ("Balakrishnan Decl."), ECF No. 20-1.  India argues that portions of Justice Verma's interpretation of the PSC are inadmissible because they consist of legal conclusions.  *See* Resp't's Reply at 3–5.  India also argues that Chief Justice Balakrishnan's explanation of Indian contract law is more persuasive.  *See id.* at 5–7.  Finally, India restates its position that the Petition must be dismissed, and that, if the Court permits HEPI another opportunity to serve India, HEPI must strictly comply with the usual requirements of the FSIA.  *See id.* at 17–21.

### III.  LEGAL STANDARD

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  "Before a federal court may exercise personal

jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). When the propriety of service is challenged, "[b]y the plain text of Rule 4, the plaintiff has the burden to 'demonstrate that the procedure employed to deliver the papers satisfies the requirement of the relevant portions of Rule 4.'" *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (quoting 4A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1083 (3d ed. 2002 & Supp. 2012)).

The FSIA is the source of jurisdiction in federal court over claims against foreign states, their agencies, or their instrumentalities. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Under the FSIA, "subject matter jurisdiction plus service of process equals personal jurisdiction." *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987) (quoting *Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981)). "[A] rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." *Candido v. District of Columbia*, 242 F.R.D. 151, 162 (D.D.C. 2007) (quoting 5B Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1353 (3d ed. 2006)). There are two requirements to obtain personal jurisdiction over a foreign state under the FSIA. First, there must be an exception to the sovereign immunity that otherwise applies under 28 U.S.C. §§ 1605–07 "or under any applicable international agreement." *See* 28 U.S.C. § 1330(a). Second, service must be made by one of the means identified in 28 U.S.C. § 1608. *See id.* § 1330(b).

# IV.  ANALYSIS

The Court can exercise personal jurisdiction over India only if it has been properly served pursuant to the FSIA.  The central question before the Court is whether the agreement between the parties, embodied in the PSC, constitutes a special arrangement for service.  Relying on Indian contract law principles and federal case law, the Court finds that the relevant language of the PSC does not constitute a special arrangement for service.  Thus, India has not been properly served and this court lacks personal jurisdiction over India.  At this time, however, the Court finds that dismissal of the Petition would be inappropriate.  Therefore, HEPI will be afforded another opportunity to effect service on India.

## A.  Service of the Petition

The core of India's argument is that HEPI's service of process was insufficient under the FSIA.  A federal court may exercise personal jurisdiction over a foreign state that has been properly served.  *See* 28 U.S.C. § 1330(b); *see also TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 299 (D.C. Cir. 2005) ("The FSIA confers . . . subject matter jurisdiction as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity, and personal jurisdiction follows where proper service has been made . . . ." (citations and internal quotation marks omitted)).  The Federal Rules of Civil Procedure provide that a "foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1).  The parties agree that Respondent is a sovereign state and therefore service in this case is governed by 28 U.S.C. § 1608(a). *See* Pet'r's Mem. at 8; Resp't's Mem. at 5 n.3.  That subsection of the FSIA prescribes four methods of service, listed in order of preference.  *See* 28 U.S.C. § 1608(a).  Plaintiffs must

attempt service by each method, in order, before proceeding to the next available method.  *See id.* § 1608(a).

The first available method of service is delivery of the summons and complaint "in accordance with any special arrangement for service between the plaintiff and the foreign state." *Id.* § 1608(a)(1).  If there is no special arrangement for service, then service must be made "in accordance with an applicable international convention on service of judicial documents." *Id.* § 1608(a)(2).  If the first two methods are not available, a plaintiff may send the summons, complaint, and a notice of suit (as well as a translation of each document in the official language of the foreign state) "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."  *Id.* § 1608(a)(3).  Finally, if the third method cannot be accomplished within thirty days, then the FSIA allows a plaintiff to request that the Clerk of the Court send two copies of the summons, complaint, and notice of suit (as well as translated versions) to the United States Secretary of State, who "shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted."  *Id.* § 1608(a)(4).  The D.C. Circuit has made clear that "[s]trict adherence to the terms of 1608(a) is required."  *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994).

### 1.  Special Arrangement for Service

The parties agree that the first method for service found in Section 1608(a) is currently at issue in this case.  The crucial question is whether the relevant portion of the PSC, Article 36, constitutes a "special arrangement for service between the plaintiff and the foreign state." 28 U.S.C. § 1608(a)(1).  Article 36 of the PSC provides that:

> All notices, statements, and other communications to be given, submitted or made
> hereunder by any Party to another shall be sufficiently given if given in writing in
> the English Language and sent by registered post, postage paid . . . to the address
> or addresses of the other Party or Parties . . . .

PSC art. 36.1

In apparent reliance on Article 36, HEPI sent the Petition, summons, and related documents to the address listed in the PSC on January 31, 2016. *See* Pet'r's Certificate of Service at 1. HEPI filed a Certificate of Service stating that the documents were transmitted by Federal Express to "the President of India through the Secretary of the Government of India, Ministry of Petroleum and Natural Gas." *Id.*

India argues that the language in Article 36 "did not address service of a summons" and does not constitute "a 'special arrangement' for service of process within the meaning of FSIA § 1608(a)(1)." Resp't's Mem. at 8. India makes two arguments based on the application of Indian law. First, India argues that, under Indian law, contract interpretation turns on the plain meaning of a contract, and nothing in the PSC "can fairly be read as consenting to accept service of a summons and complaint from a foreign judicial proceeding delivered by Federal Express." *Id.* at 10. Second, India argues that Indian law "prohibits service by mail or private courier," and because the PSC is governed by Indian law, Article 36 cannot be read to permit service by mail. *Id.* at 11. India also relies on federal court decisions to argue that a special arrangement for service cannot be found "absent explicit language in the parties' contract specifying a method of service of judicial documents in the event of suit." *Id.* at 12.

In response, HEPI argues that India's description of Indian contract law is overly technical and that the Court should interpret Article 36 in a manner that considers commercial realities and attempts to harmonize different portions of the PSC. *See* Pet'r's Opp'n at 6. HEPI asserts that the weight of U.S. case law suggests that "notice provisions like Article 36 form a

'special arrangement for service' within the meaning of the FSIA." *Id.* at 8. And to the extent certain decisions reach the opposite conclusion, particularly *Orange Middle East & Africa v. Republic of Equatorial Guinea*, HEPI attempts to distinguish the facts of this case. *See id.* at 10–12. Finally, HEPI briefly argues that the fact that Indian law "does not permit service of foreign legal documents by postal channel as a general rule . . . does not speak to the arrangements it entered into with HEPI under the terms of the PSC." *Id.* at 13.

## 2. Indian Contract Law Experts

The parties agree that the PSC is governed by Indian law. *See* Resp't's Mem. at 8 ("As an initial matter, the validity of Article 36 . . . must be determined by Indian law, which governs the PSC."); Pet'r's Opp'n at 6 ("Both parties agree that the PSC must be interpreted in accordance with Indian law."). The terms of the PSC are explicit on this point. Article 32 of the PSC provides that the contract "shall be governed and interpreted in accordance with the laws of India." PSC art. 32.1. Both parties have put forward expert testimony that provides principles of Indian contract law and examines the PSC. HEPI provides the declaration of former Justice of the Indian Supreme Court Deepak Verma. *See generally* Verma Decl. And India provides a competing declaration prepared by former Chief Justice of the Indian Supreme Court K.G. Balakrishnan. *See generally* Balakrishnan Decl.

Under Federal Rule of Civil Procedure 44.1, a court interpreting a foreign country's law "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Frequently, the contours of foreign law are established by "written or oral expert testimony accompanied by extracts from foreign legal material." *Ganem v. Heckler*, 746 F.2d 844, 854 (D.C. Cir. 1984). Expert testimony on foreign law should assist the court in "determining the content of the

applicable foreign law—not to apply [the law] to the facts of the case." *Minebea Co. Ltd, v. Papst*, 444 F. Supp. 2d 68, 182 (D.D.C. 2006); *see also Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 227–28 (D.D.C. 2011) ("Such expert testimony is intended to aid the court in determining the content of the law, not in applying that law to the facts of the case.").  A court, remembering the partisan nature of these expert reports, should critically evaluate expert testimony, and may "engage in its own research . . . [or] reexamine and amplify material that has been presented by counsel in partisan fashion."  Fed. R. Civ. P. 44.1 (advisory committee's note); *see also* 9A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2444 (3d ed. 2002 & Supp. 2016) ("All too often counsel will do an inadequate job of researching and presenting foreign law or will attempt to prove it in such a partisan fashion that the court is obliged to go beyond their offerings.").

India argues that the Court should view the declaration of Justice Verma "with a jaundiced eye and exclude as inadmissible" portions of his testimony that are "legally conclusory."  Resp't's Reply at 3.  India takes particular exception to Justice Verma's conclusion that "as a matter of Indian Contract Law, Article 36.1 of the PSC encompasses the service of the Petition."  Verma Decl. ¶ 10.  In contrast, India claims that Chief Justice Balakrishnan's declaration "presents a straightforward explanation of Indian contract principles that comports with Indian case law."  *See* Resp't's Reply at 5.  The Court notes that Chief Justice Balakrishnan's declaration could also be construed as applying foreign law "to the facts of the case." *Minebea Co.*, 444 F. Supp. 2d at 182.  For example, Chief Justice Balakrishnan states that

> [A]n Indian court interpreting Article 36.1 of the PSC would construe the clause according to its terms to exclude service of a foreign court's judicial summons because the language of Article 36.1 is unambiguous and makes clear that it only applies to notices required by the contract and issued between the parties.

Balakrishnan Decl. ¶ 30.  The declaration applies Indian law to the specifics of the PSC,

regardless of the fact that the declaration is phrased in terms of what a hypothetical Indian court

would do.

Both declarations may, nevertheless, assist the Court in understanding the content of

Indian law.  Thus, the Court will consider the portions of Justice Verma's and Chief Justice

Balakrishnan's declarations that merely state the content of Indian law, but will not rely on legal

conclusions provided by either.  *See HTC Corp. v. IPCOM GMBH & Co., KG*, No. 08-1897,

2009 WL 5908010, at *1 (D.D.C. Dec. 18, 2009) (explaining that where an expert "has merely

stated what [the foreign] law is, his declaration may be helpful," but "to the extent he has

attempted to identify relevant facts and discuss the outcomes of the case, or to the extent his

opinions appear partial . . . , the Court may exercise its discretion not to consider his

statements").  The Court will also consider the judicial opinions and other resources provided by

the parties and their experts to the extent those materials are helpful and relevant to the Court's

understanding of Indian contract law.  *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the

court may consider any relevant material or source . . . ."); *see also* Mot. Dismiss, Exs. B–C,

ECF Nos. 16-3, 16-4 (cases cited by India); Verma Decl., app. A, ECF Nos. 17-2, 17-3, 17-4,

17-5 (authorities provided by Justice Verma); Balakrishnan Decl., app., ECF No 20-3

(authorities provided by Chief Justice Balakrishnan).

Justice Verma, HEPI's expert, begins his declaration with a description of what he

describes as the "cardinal rules of interpretation governing commercial contracts in India."

Verma Decl. ¶ 12.  Justice Verma states that contracts should be construed "strictly" and

interpreted as they were "understood between the parties."  *Id.* ¶ 13.  One of the main thrusts of

Justice Verma's declaration is that Indian contract law seeks to avoid overly technical

interpretations.  *See id.* ¶ 31.  To that end, Justice Verma states that contract interpretation should consider the ordinary meaning of words found in the agreement and the commercial objectives of the parties to the contract.  *See id.* ¶¶ 14, 17.  HEPI relies on Justice Verma's explanation that contracts should be read "harmonious[ly]."  *See* Pet'r's Opp'n at 6–7.  The judicial decision that includes that language states:

> It is settled canon of construction that a contract of partnership must be read as a whole and the intention of the parties must be gathered from the language used in the contract by adopting harmonious construction of all the clauses contained therein. The cardinal principle is to ascertain the intention of the parties to the contract through the words they have used, which are key to open the mind of the makers.

Verma Decl. ¶ 15 (quoting *M.O.H. Udaman and Ors. v. M.O.H. Aslum*, AIR 1991 SC 1020 (India)).[4]

Chief Justice Balakrishnan, India's expert, suggests that Justice Verma's analysis identifies genuine principles of contract interpretation, but elevates those ideas over the "cardinal principle."  Balakrishnan Decl. ¶¶ 15, 27.  That cardinal principle is that "the words of the agreement mean what the parties have in fact said, so that their words must be construed as they stand."  *Id.* ¶ 18 (citing 1 *Chitty on Contracts* at 932 (31st ed. 2012)); *see also* Verma Decl., app. A at 19–20 (attaching the same source).  Along the same lines, Chief Justice Balakrishnan cites a range of authorities in support of the principle that language in a contract should be interpreted in its "plain and ordinary sense," and where a provision is "unambiguous, the contract needs no interpretation."  Balakrishnan Decl. ¶ 16.  Chief Justice Balakrishnan also provides a

---

[4] India argues that the decision quoted by Justice Verma is limited to the context of partnerships under the Indian Partnership Act.  *See* Resp't's Reply at 6 n.2.

litany of authorities standing for the principle that the intention of the parties should be determined from the language of the contract itself. *Id.* ¶¶ 18–22.[5]

The Court will consider the expert reports provided by Justice Verma and Chief Justice Balakrishnan when interpreting the PSC and deciding whether Article 36 constitutes a special arrangement for service under the FSIA. *See Ganem*, 746 F.2d at 854 (explaining that a court may consider "written or oral expert testimony accompanied by extracts from foreign legal material"); *Estate of Botvin*, 772 F. Supp. 2d at 227–28 ("[E]xpert testimony is intended to aid the court in determining the content of the [foreign] law . . . .").

### 3.  Interpretation of the PSC

Although HEPI argues that the Court should avoid an overly technical reading of the PSC, the parties and their experts agree that any analysis of the agreement must begin with the language of the contract. *See* Verma Decl. ¶ 13 ("[T]erms of a contract have to be construed strictly without altering the nature of the contract . . . ."); Balakrishnan Decl. ¶ 17 ("[B]ecause the cardinal presumption is that the parties have intended what they have in fact said, their words must be construed as they stand."). To the extent possible, clauses in contracts should be interpreted in their plain and ordinary sense. *See* Verma Decl. ¶ 14; Balakrishnan Decl. ¶ 16. As previously stated, Article 36 of the PSC provides that:

> All notices, statements, and other communications to be given, submitted or made hereunder by any Party to another shall be sufficiently given if given in writing in the English Language and sent by registered post, postage paid . . . to the address or addresses of the other Party or Parties . . . .

---

[5] Chief Justice Balakrishnan also asserts that Indian law does not contemplate parties agreeing in advance to a particular method for service from a foreign court. *See* Balakrishnan Decl. ¶¶ 39–46. He also states that, under Indian law, a contract cannot override the methods for service created by India's rules of civil procedure and its participation in international conventions for service. *See id.* ¶ 45.

PSC art. 36.1

The crucial question is whether the service of legal process is one of the communications contemplated by Article 36 of the PSC.  At first glance, the language appears to be very broad, encompassing "*all* notices, statements, and other communications."  *Id.*  Crucially, however, the initial language is limited to communications "given, submitted, or made *hereunder* by any Party to another."  *Id.*  The term "hereunder" can mean either "[l]ater in this document" or "[i]n accordance with this document."  *Hereunder*, *Black's Law Dictionary* (10th ed. 2014).  The older definition put forth by Chief Justice Balakrishnan similarly defines the term as a "word of reference in a document or law, directing attention to matter therein which follows in such document or is contained therein."  Balakrishnan Decl. ¶ 33 (quoting *Hereunder*, *Black's Law Dictionary* (6th ed. 1990)).  The thrust of both definitions is the same.  The word "hereunder" is used in reference to other portions of the same legal document—pointing to language that appears on a later page *or* to a directive that expresses how an action must be carried out pursuant to the document.

Thus, the plain language of Article 36 appears to be limited to notices and communications specifically prescribed in the PSC itself.  In fact, the PSC sets forth a number of explicit notice provisions.  India identifies eighteen distinct types of notices, *see* Resp't's Mem. at 14–15, and none expressly reference service of process, *see, e.g.*, PSC art. 10.1 (notice of discovery of hydrocarbons); PSC art. 19.4.3 (notice of default); PSC art. 21.3.4 (notice of meeting); PSC art. 30 (notice of intention to cancel contract).  Therefore, the term "hereunder" limits the application of Article 36 to communications specifically contemplated by the PSC, and does not include service of process.

An analogous section of the PSC bolsters this reading of Article 36.  Article 32.3 of the

PSC states that "[a]ll communications, hearing or visual materials or documents relating to this

Contract shall be written or prepared in English."  PSC art. 32.3.  Like the relevant language in

Article 36, this provision begins with "all communications," but it is limited to communications

"relating to" the PSC instead of communications "given, submitted or made hereunder."

*Compare* PSC art. 32.3 ("All communications, hearing or visual materials or documents relating

to this Contract shall be written or prepared in English."), *with* PSC art. 36.1 ("All notices,

statements, and other communications to be given, submitted or made hereunder . . . .").

HEPI, relying on Justice Verma's declaration, argues that these provisions should be read

"harmonious[ly]," by which it means the provisions should be understood to mean the same

thing.  *See* Pet'r's Opp'n at 7 (citing Verma Decl. ¶ 20).  This argument is not persuasive.  The

plain and ordinary meaning of the two phrases is not the same—the word "relating" implies a

broader, more flexible connection to the PSC.  *See Relate*, Merriam–Webster Online Dictionary,

http://www.merriam-webster.com/dictionary/relate (last visited Nov. 30, 2016) (defining the

intransitive verb "relate" to mean "to have relationship or connection").  The parties could

certainly have used the broader "relating" language in Article 36, but because they did not,

interpreting *different* language to have the *same* meaning would not serve the purpose of

ensuring a harmonious reading of the PSC.  *See* 1 *Chitty on Contracts* at 932 (31st ed. 2012)

("[T]he words of the agreement mean what the parties have in fact said, so that their words must

be construed as they stand.").

The other principles of Indian contract law emphasized by Justice Verma do not change

the outcome.  Justice Verma states that words should be "construed in their ordinary and popular

sense," Verma Decl. ¶ 14, but "hereunder" is not commonly used outside of a legal setting.

In fact, its general dictionary definition is almost identical to its legal definition. *See Hereunder*, Merriam–Webster Online Dictionary, http://www.merriam-webster.com/dictionary/hereunder (last visited Nov. 30, 2016) (defining hereunder to mean "under or in accordance with this writing or document"). Giving meaning to the word is not an overly technical application. Instead, this interpretation simply reflects the intention of the parties as made clear through their language. *See* Verma Decl. ¶ 15 ("The cardinal principle is to ascertain the intention of the parties to the contract through the words they have used, which are key to open the mind of the makers." (quoting *M.O.H. Udaman and Ors. v. M.O.H. Aslum*, AIR 1991 SC 1020 (India))).

Similarly, Justice Verma presents a range of cases explaining that contracts should be interpreted in light of the business objectives of the clause itself and the contract as a whole. *See id.* ¶ 15, 30–34. But HEPI's only suggestion for why its proposed interpretation of Article 36 makes better business sense, is that "it would 'make little commercial sense' for the contract to specify a mode for the proper delivery of some communications relating to the PSC but not for others." Pet'r's Opp'n at 7 (quoting Verma Decl. ¶ 20). As India correctly points out, it would be perfectly reasonable for the parties to ease the process for providing certain notices—specifically those enumerated in the PSC—without "supersed[ing] legal protections . . . for service of process." Resp't's Reply at 10.

HEPI also makes a series of arguments relying on materials outside of Article 36, but each must also fail. First, HEPI asserts that India "itself has served HEPI with legal process in accordance with Article 36 of the PSC, supporting" the argument that the parties intended the provision to include service. *See* Pet'r's Opp'n at 8; *see also* Verma Decl. ¶ 28. India disputes HEPI's factual characterization. *See* Resp't's Reply at 11–12. The Court need not wade into this factual dispute, however, because it is not relevant here. The Court must focus on the contract

itself.  *See* Verma Decl. ¶ 13; Balakrishnan Decl. ¶ 17.  Whether or not India served HEPI according to Article 36 is irrelevant to the plain and ordinary sense of the PSC.  *See* Verma Decl. ¶ 14; Balakrishnan Decl. ¶ 16.

Second, HEPI notes that Article 33.9 of the PSC incorporates by reference the UNCITRAL Model Law on International Commercial Arbitration of 1985 and argues that the model law "explicitly contemplates the enforcement of awards in the courts."  Pet'r's Opp'n at 8; *see also* Verma Decl. ¶¶ 26–27.  Through this roundabout method, HEPI and Justice Verma conclude that the PSC implicitly contemplates service of process.  Stretching the PSC in this manner, however, would be precisely the sort of overly technical reading that HEPI objects to. *See* Pet'r's Opp'n at 6; Verma Decl. ¶ 31.  At any rate, the mere fact that the PSC incorporates the UNCITRAL Model Law, which in turn contemplates a lawsuit to enforce arbitration, says nothing about whether the parties consented to a particular method of service.

Third, HEPI argues that Appendix E[6] of the PSC provides support for HEPI's interpretation of Article 36.  *See* Pet'r's Opp'n at 7–8; Verma Decl. ¶¶ 24–25.  Appendix E, a financial and performance guarantee form, states that the guarantee shall remain in effect until no sum remains payable "under the Contract or as a result of any decision or award made by any expert or arbitral tribunal thereunder."  PSC at 187.  HEPI and Justice Verma contend that the use of "thereunder" in Appendix E suggests that the term is used broadly throughout the PSC. *See* Pet'r's Opp'n at 7–8; Verma Decl. ¶¶ 24–25.  But the PSC explicitly authorizes both expert dispute resolution and arbitration.  *See* PSC art. 33.  Logically, those procedures would take place pursuant to (or, used in context, "thereunder") the PSC.  If anything, this provision cuts

---

[6] It appears that HEPI unintentionally referred to Appendix F, which does not exist, instead of Appendix E.  *See* PSC at 186.

against HEPI's argument.  "Thereunder" is used in Appendix E to limit the provision, not expand

its meaning.  Because the parties used "thereunder," the clause only applies to arbitrations

initiated pursuant to the contract, not the entire universe of arbitrations.  The use of "hereunder"

in Article 36 is similarly restrictive.

Because the Court finds that the term "hereunder" restricts the application of Article 36 to

forms of communication specifically contemplated by the PSC, the Court need not address

India's argument that Article 36 only applies to communications from one party to another and

that service of process is, instead, a notice from the court.  *See* Resp't's Reply at 7.[7]

### 4.  FSIA Precedent

The Court's conclusion that Article 36 of the PSC does not constitute a special

arrangement for service pursuant to the FSIA also comports with recent case law in this District.

The analysis found in *Orange Middle East & Africa v. Republic of Equatorial Guinea*, No.

15-0849, 2016 WL 2894857 (D.D.C. May 18, 2016), which was decided earlier this year, is

particularly compelling.  In that case, a petitioner sought to enforce an international arbitration

award and contended that it had served the sovereign respondent pursuant to a special

arrangement for service.  *See id.* at *1, *3.  The respondent moved to dismiss.  *See id.* at *2.  The

court quoted the relevant contract language, which stated "how the parties were to transmit

'notices, agreements, waiver declarations, and other communications *made under this*

*Agreement.*'"  *Id.* at *3.  The Court determined that the quoted language, "[l]imited as it is to the

---

[7] For the same reasons, the Court need not reach India's argument that "Indian law
governing the service of foreign judicial documents within India prohibits service by mail or
private courier."  Resp't's Mem. at 11.  The Court notes, however, that the question before the
Court is whether *the PSC* creates a special arrangement for service under the FSIA.  Although
Indian law governing service could, perhaps, be relevant to interpreting the PSC, the foreign law,
alone, would not be construed to prevent all service if a special arrangement existed.

Agreement . . . does not constitute a special arrangement for service of legal process under FSIA." *Id.*

The court found a "distinction in the case law [was] evident" that "distinguished [between] communications provisions limited to a contract/agreement and more general provisions." *Id.* at *4. In other words, courts in this District have found a special arrangement for service in broad, unrestricted contract language.[8] *See, e.g., Int'l Road Fed'n v. Embassy of the Dem. Rep. Congo*, 131 F. Supp. 2d 248, 251 (D.D.C. 2001) ("[A]ll notices, demands, or requests between Sublessor and Sublessee shall be delivered in person, by certified mail, return receipt requested, or by registered mail . . . ."); *Marlowe v. Argentine Naval Comm'n*, 604 F. Supp. 703, 707 (D.D.C. 1985) ("All notices, requests, demands, or other communications to or upon the respective parties hereto shall be deemed to have been given or made when deposited in the mail, postage prepaid . . . ."). But courts have refused to find a special arrangement for service where the relevant provision is restricted to communications specifically contemplated by the contract. *See, e.g., Underwood v. United Republic of Tanzania*, No. 94-902, 1995 WL 46383, at *2 (D.D.C. Jan. 27, 1995) ("[A]ny notices 'required or permitted herein' would be effective when mailed or hand-delivered . . . ."); *see also Orange Middle E. & Afr.*, 2016 WL 2894857, at *3 (referring to "notices, agreements, waiver declarations, and other communications made under this Agreement").

As HEPI correctly argues, the *Orange Middle East & Africa* decision appears to conflict with *G.E. Transportation System S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132 (D.D.C.

---

[8] The court also found that the same distinction could be found in other jurisdictions. *See Orange Middle E. & Afr.*, 2016 WL 2894857, at *4 (citing *Berdakin v. Consulado de la Republica de El Sal.*, 912 F. Supp. 458, 466 (C.D. Cal. 1995); *Glencore Ltd. v. Occidental Arg. Expl. and Prod., Inc.*, No. 11-3070, 2012 WL 591226, at *5 (S.D. Tex. Feb. 22, 2012)).

2010).  In that case, the court found a special arrangement for service based on a contract

provision requiring that "[a]ny notice to be given to [Albania] . . . shall be in writing . . . ."  *Id.* at

136–37.  Crucially, the court omitted language that appears to limit the breadth of the contract

provision.  As recounted in *Orange Middle East & Africa*, the full phrase stated, "[a]ny notice to

be given to [Albania] *under these Conditions* shall be in writing, and shall be sent by personal

delivery, air post . . . ."  2016 WL 2894857, at *4 (emphasis added).[9]  The *Orange Middle East*

*& Africa* court concluded, "[s]ince the Judge did not include the limiting words in his opinion,

they were clearly not important to his analysis.  To the extent that the Judge would have found a

special arrangement even with the omitted words, this Judge disagrees."  *Id.* at *4.  HEPI notes

this disagreement, and argues that the Court should follow the path set by *G.E. Transport* instead

of *Orange Middle East & Africa.  See* Pet'r's Opp'n at 11 & n.13.  The Court is not persuaded.

In light of Section 1608(a)'s requirement for "a special arrangement *for service*," *see* 28 U.S.C. §

1608(a)(1) (emphasis added), and the D.C. Circuit's emphasis on "[s]trict adherence" to the

statute, *see Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994), the

Court finds the analysis of *Orange Middle East & Africa* to be compelling.  Thus, the restrictive

provision found in Article 36 does not constitute a special arrangement for service.

　　　HEPI's remaining objections to this approach are not persuasive.  First, HEPI attempts to

distinguish this case from *Orange Middle East & Africa* because "Indian law governs the

contract at issue here, and Indian law avoids overly technical interpretations of contracts, but

instead interprets them harmoniously and in a commercially sensible way."  Pet'r's Opp'n at 10.

The Court must reject this argument because it has already determined that Article 36 does not

---

[9] The original language can also be found in the filings of the parties to the original case.
*See* Decl. of Henry Weisburg, Ex. B, *G.E. Transp. Sys. v. Albania*, No. 08-2042 (D.D.C. Apr. 17,
2009), ECF No. 12-2.

contemplate service of process under Indian contract law.  *See supra* Part IV.A.3.  Similarly,

HEPI argues that this case is distinguishable because India has used Article 36 to serve legal

process on HEPI and because the PSC contemplates a lawsuit to enforce arbitration by

incorporating the UNCITRAL Model Law.  *See* Pet'r's Opp'n at 10.  The Court has explained

why these arguments are not persuasive, and they are no more compelling in the context of

attempting to distinguish this case from *Orange Middle East & Africa.  See supra* Part IV.A.3.

Finally, HEPI argues that the Court's approach will "lead to anomalous results," meaning

that "if the parties to a contract actually wanted to establish a procedure for the service of process

for lawsuits arising out of or relating to *that* contract (but not disputes having no relationship to

that contract), they could not do so."  *Id.* at 11.  This argument is perplexing.  If the parties

wanted to achieve the result described by HEPI, they could simply agree, for instance, that "all

legal process related to this contract must be delivered" in a specified manner.  Or, they could

agree, more broadly, that "*all* communications and notices related to the contract must be

delivered" in a specified manner.  *See, e.g., Int'l Road Fed'n*, 131 F. Supp. 2d at 251; *Marlowe*,

604 F. Supp. at 707.  That language would surely constitute a special arrangement for service of

a suit related to the contract, but not for a completely unrelated action.

The Court's review of the relevant case law bolsters its analysis of Article 36 through the

lens of Indian contract principles.  Thus, the Court finds that Article 36 does not constitute a

special arrangement for service under the FSIA, and that HEPI's attempt to serve India by

Federal Express was insufficient for the purposes of the FSIA.

### B.  Personal Jurisdiction

As previously explained, the FSIA establishes that a district court has personal

jurisdiction over a foreign state if the court has jurisdiction over the claims brought against the

state and if "service has been made under section 1608."  28 U.S.C. § 1330(b).  The parties agree

that this Court may exercise personal jurisdiction over India only if it has been properly served

pursuant to the FSIA.  *See* Resp't's Mem. at 17–18; Pet'r's Opp'n at 16.  Nor is there any dispute

that HEPI has only attempted to serve India pursuant to the first available method in Section

1608(a)—a special arrangement for service.  *See* Resp't's Mem. at 16–17 (noting that HEPI has

not attempted service through the Hague Service Convention pursuant to Section 1608(a)(2));

Pet'r's Opp'n at 15 (acknowledging that HEPI has not attempted any other method of service).

Because the Court finds that HEPI's first attempt to serve India was insufficient and the parties

agree that HEPI has made no other attempt to effect service, the Court lacks personal jurisdiction

over India at this time.

India argues that this Court must now dismiss the case for lack of personal jurisdiction.

*See* Resp't's Mem. at 17–18.  HEPI suggests, however, that "dismissal on personal jurisdiction

grounds is . . . an improper remedy."  Pet'r's Opp'n at 16–17.  The Court notes that India's

motion to dismiss for lack for personal jurisdiction turns entirely on the fact that service has not

been perfected.  For the reasons explained below, the Court will permit HEPI another

opportunity to effect service, and therefore finds that dismissal on personal jurisdiction grounds

is not appropriate at this time.  *See Barot v. Embassy of the Republic of Zam.*, 785 F.3d 26,

29–30 (D.C. Cir. 2015); *see infra* Part IV.C.

### C.  HEPI May Attempt to Perfect Service

India argues that the Petition must be dismissed because HEPI has not properly served

the Petition and, thus, the Court lacks personal jurisdiction over India.  *See* Resp't's Mem. at 17.

In its opposition to the motion to dismiss, HEPI argues that it should be given another

opportunity to serve India if the Court decides that the first attempt to effect service by Federal

Express was insufficient. *See* Pet'r's Opp'n at 13. HEPI notes that the statute of limitations for enforcing the Award has now passed and dismissal would preclude HEPI from refiling its Petition. *Id.* In response, India argues that "courts in this Circuit consistently dismiss lawsuits where the plaintiff has failed to properly effect service pursuant to § 1608(a)" and that HEPI will not be irreparably harmed because its petition to enforce the Award before an Indian court remains pending. *See* Resp't's Reply at 18. In light of recent D.C. Circuit precedent, the Court will allow HEPI another opportunity to effect service of process on India.

India cites a string of cases where courts in this District dismissed actions because service was not properly effected under Section 1608(a) instead of granting additional time to perfect service. *See id.* at 18 (citing *Orange Middle E. & Afr. v. Republic of Equatorial Guinea*, No. 15-0849, 2016 WL 2894857, at *5 (D.D.C. May 18, 2016); *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 34 (D.D.C. 2014); *Sabbithi v. Al Saleh*, 623 F. Supp. 2d 93, 97 (D.D.C. 2009); *I.T. Consultants, Inc. v. Islamic Republic of Pakistan*, No. 00-0503, 2000 U.S. Dist. LEXIS 22548, at *11 (D.D.C. Sep. 28, 2000)). At the outset, the Court notes that one of the cases India cites, *Sabbithi v. Al Saleh*, was vacated on reconsideration after the plaintiffs successfully served Kuwait pursuant to the Hague Service Convention. *See Sabbithi v. Saleh*, No. 07-0115, 2011 WL 11709042, at *2 (D.D.C. Mar. 8, 2011).[10] Despite certain distinguishing features, there is no doubt that India has provided a series of cases where courts in this District dismissed actions for similar defects. Nevertheless, the Court finds that more recent and more analogous D.C. Circuit precedent controls the outcome of this case.

---

[10] Similarly, the decision in *I.T. Consultants* appears to rely, at least in part, on the fact that the plaintiff had already attempted service *twice* and had notice of a letter written by a State Department official explaining that the prior attempt was not sufficient. *See I.T. Consultants*, 2000 U.S. Dist. LEXIS 22548, at *11.

In *Barot v. Embassy of the Republic of Zambia*, the district court granted the Embassy of Zambia's motion to dismiss for failure to serve process.  785 F.3d 26, 28 (D.C. Cir. 2015).  The plaintiff, proceeding *in forma pauperis* but represented by counsel, attempted to serve process several times, but the district court decided each attempt was flawed.  *Id.* at 28–29.  The plaintiff appealed, and the D.C. Circuit held that the district court abused its discretion by dismissing the case and remanded to the district court to afford the plaintiff another opportunity to effect service.  *Id.* at 29–30.  The D.C. Circuit noted that, "[i]n general, 'district courts have broad discretion to dismiss a complaint for failure to effect service.'" *Id.* at 29 (quoting *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983)).  The court also restated its guidance that, "in cases of *sua sponte* dismissals for inadequate service, . . . 'dismissal is not appropriate when there exists a reasonable prospect that service can be obtained.'"  *Id.* at 29 (quoting *Novak*, 703 F.2d at 1310).  Furthermore, "dismissal 'for failure to prosecute due to a delay in service is appropriate only when there is no reasonable probability that service can be obtained or there is a lengthy period of inactivity.'"  *Id.* (quoting *Angellino v. Royal Family Al–Saud,* 688 F.3d 771, 775 (D.C. Cir. 2012)).

India contends that *Barot* is not analogous to this case.  Its objection is that the *Barot* plaintiff was only permitted another opportunity to effect service "because the plaintiff 'demonstrat[ed] a good faith effort at timely compliance amidst the sometimes confusing directions from the district court.'"  Resp't's Reply at 19 (alteration in original) (citing *Barot*, 785 F.3d at 27).  But the court's analysis did not turn solely on the district court's role in creating confusion, as India suggests. The court also referred to the plaintiff's "good faith effort at timely compliance." *Barot*, 785 F.3d at 27.  Here, HEPI attempted timely service under a reading of the PSC and the FSIA that was certainly colorable, especially in light of possible disagreement

between courts in this District.  *See supra* Part IV.A.3; *Orange Middle E. & Afr.*, 2016 WL 2894857, at *4 ("To the extent that the Judge would have found a special arrangement even with the omitted words, this Judge disagrees.").  Furthermore, because the FSIA prevents a party from skipping to the next method of service unless the previous method is unavailable or has proven unsuccessful, *see* 28 U.S.C. § 1608(a), HEPI's failure to pursue subsequent methods of service while pursuing the first available method should not be considered evidence of delay.

In *Barot*, the court also noted that the statute of limitations had run on the plaintiff's claim, meaning that dismissal would have led to harsh consequences.  *See* 785 F.3d at 29.  On the other hand, the Embassy of the Republic of Zambia had identified no prejudice it would suffer if the plaintiff were permitted another opportunity to effect service.  *Id.*  So too here. HEPI asserts that the statute of limitations has run, *see* Pet'r's Opp'n at 14, and India appears to agree, *see* Resp't's Reply at 19–20.  The Court is not persuaded by India's argument that HEPI is not harmed because it is also conducting similar litigation in the courts of India.  *See id.* at 19. To the extent HEPI is permitted to enforce the Award in the venue of its choosing, the Court finds that the loss of that right is a cognizable harm.  The Court also notes that India has provided no authority to the contrary.

Furthermore, the *Barot* court took note of the fact that "there is no statutory deadline for service under the Foreign Sovereign Immunities Act, unlike the presumptive 120-day time limit in Rule 4(m) of the Federal Rules of Civil Procedure."  785 F.3d at 29.  Although India cites the importance of "strict adherence" to Section 1608(a), *see* Resp't's Reply at 17 (quoting *Transaero*, 30 F.3d at 154), the terms of the statute contain no time limitation, *see* 28 U.S.C. § 1608(a).  Although the Court must require "strict adherence to the terms of 1608(a)," *Transaero, Inc.*, 30 F.3d at 154, a time limit for service is simply not one of those terms.

Finally, the *Barot* court also found that the plaintiff had a reasonable prospect of effecting service. *See* 785 F.3d at 29. In this case, HEPI also has a reasonable possibility of effecting service on India. In fact, India has vouched for the Indian Central Authority's ability to receive and distribute international service. *See* Resp't's Reply at 21. For these reasons, the Court finds that dismissal of the petition is not the proper remedy for HEPI's failure to effect service of process. Instead, consistent with D.C. Circuit precedent, HEPI will be permitted to attempt service through the next available method in the FSIA.

### D. HEPI Must Strictly Comply with the FSIA Service Requirements

Finally, the Court turns to HEPI's request that it should be permitted to serve India by mail, pursuant to 28 U.S.C. § 1608(a)(3), without first attempting service "in accordance with an applicable international convention on service," pursuant to 28 U.S.C. § 1608(a)(2). *See* Pet'r's Opp'n at 15. HEPI argues that "the FSIA, while strictly construed, also contemplates the efficient and timely effectuation of service." Pet'r's Opp'n at 15. HEPI asserts that India's compliance with the Hague Service Convention sometimes results in "intolerable delay or failure to serve." *Id.* In support of that position, HEPI cites several cases where district courts have permitted substituted methods of service on non-state parties in India. *See id.* at 15–16 (citing *FTC v. PCCare247 Inc.*, No. 12-7189, 2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013); *Gurung v. Malhotra*, 279 F.R.D. 215, 218–219 (S.D.N.Y. 2011); *Richmond Tech., Inc. v. Aumtech Bus. Sols.*, No. 11-2460, 2011 WL 2607158, at *13–14 (N.D. Cal. July 1, 2011)). HEPI concludes that, in light of India's purported "dilatory record," requiring HEPI to attempt service under the relevant international convention "will only delay the resolution of this proceeding despite the summary nature of arbitral confirmation, all to the detriment of HEPI and this Court, and solely to [India's] benefit." Pet'r's Opp'n at 16.

HEPI's argument is not persuasive.  The D.C. Circuit has made clear that "strict adherence to the terms of 1608(a) is required."  *Transaero*, 30 F.3d at 154.  This strict application stands in contrast with Section 1608(b), which governs service on agencies or instrumentalities of a foreign state (not the state itself or its political subdivisions), and "may be satisfied by technically faulty service that gives adequate notice to the foreign state."  *Id.* at 153. The cases that HEPI relies on are not even governed by that more lenient standard.  As India correctly points out, none of the three cases cited by HEPI involve service on a sovereign nation or its agency.  *See* Resp't's Reply at 21; *see also PCCare247 Inc.*, 2013 WL 841037, at *6 (permitting service of private defendants by both email and Facebook message); *Gurung*, 279 F.R.D. at 221 (permitting alternative means of service on private defendants); *Richmond Technologies, Inc.*, 2011 WL 2607158, at *14 (same).

The law is clear that "FSIA lists the methods [of service] in descending order of preference" and a party "may only attempt service through the second method, for example, if service through the first method is unavailable or has proven unsuccessful."  *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 101 (D.D.C. 2005).  At this point, HEPI has not attempted to serve India through the relevant international convention.  HEPI admits that it could attempt service under the Hague Service Convention, but suggests that the Indian body responsible for administering that convention "has a demonstrably dilatory record."  Pet'r's Opp'n at 16. In other words, the process may be slow, or eventually prove unsuccessful, but it is available. *See* 28 U.S.C. § 1608(a)(3) (permitting service by mail only when "service *cannot be made* under paragraphs (1) or (2)" (emphasis added)).  HEPI has not pointed to any case where a court permitted service on a sovereign nation in the method HEPI suggests, and the Court is mindful of the D.C. Circuit's instruction that "leniency . . . would disorder the statutory scheme."

*Transaero, Inc.*, 30 F.3d 154.  For these reasons, HEPI must attempt service on India using the methods listed in the FSIA in their proper order of preference.

## V.  CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Specially-Appearing Respondent's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction (ECF No. 16).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 30, 2016                                    RUDOLPH CONTRERAS
                                                            United States District Judge